# Exhibit A

Trials@uspto.gov                                    Paper 9
571-272-7822                                        Entered: May 15, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

SQUARE, INC.
Petitioner

v.

J. CARL COOPER
Patent Owner

————————

Case IPR2014-00156
Patent 6,764,005

Before JAMESON LEE, GEORGE R. HOSKINS, and KRISTINA M. KALAN,
*Administrative Patent Judges.*

KALAN, *Administrative Patent Judge.*

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2014-00156
Patent 6,764,005

# I. INTRODUCTION

On November 18, 2013, Square, Inc. ("Petitioner") filed a Petition ("Pet.") to institute an *inter partes* review of claims 1-6 of U.S. Patent No. 6,764,005 ("the '005 patent") pursuant to 35 U.S.C. § 311-319.  On February 25, 2014, J. Carl Cooper ("Patent Owner")[1] filed a Preliminary Response ("Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 314.  The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a):

> THRESHOLD – The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Petitioner challenges claims 1-6 of the '005 patent as anticipated under 35 U.S.C. § 102(a) and § 102(e), and as obvious under 35 U.S.C. § 103(a).  Pet. 7.  We grant the Petition as to claims 1-6 on certain grounds as discussed below.

## A. Related Proceedings

Patent Owner represents that the '005 patent is subject to pending litigation (1) in the Northern District of Illinois (filed by eCharge Licensing LLC against Petitioner, No. 1:13-cv-06445), Ex. 1003; and (2) in the District of Massachusetts (filed by SCVNGR, Inc. against eCharge Licensing LLC,

---

[1] Prior Board filings in this proceeding have identified Patent Owner in the caption as eCharge Licensing LLC.  Papers 3 and 7.  However, the record indicates the '005 patent is owned by J. Carl Cooper, while eCharge Licensing LLC is an exclusive licensee.  Prelim. Resp. 1.  Therefore, this Decision identifies Mr. Cooper as the Patent Owner.

Case IPR2014-00156
Patent 6,764,005

No. 1:13-cv-12418). Pet. 5-6. Patent Owner indicates that, as of the date of

the filing of the Preliminary Response: (1) the Illinois court had granted an

agreed motion to stay, and (2) the Massachusetts court had not yet ruled on a

motion to stay filed by SCVNGR, Inc. and opposed by eCharge Licensing

LLC. Prelim. Resp. 2.

### B. The '005 Patent

The '005 patent "relates to the use of devices having information or

patterns carried in or on some storage media, examples of which include

photographic patterns, keys or the magnetic strip on credit cards." Ex. 1001,

1:15-18. Figure 2 of the '005 patent is reproduced below.



Figure 2

Figure 2 is a diagram of the preferred embodiment of the present invention,

dubbed a multi-card by the inventor, having plastic substrate 3, on which is

suitably mounted programmable magnetic strip 4, LCD display 5, solar cell

power source 6, infrared emitter 7, infrared sensor 8, and key pad 9. *Id.* at

2:51-57.

3

Case IPR2014-00156
Patent 6,764,005

Figure 3 of the '005 patent is reproduced below:



Figure 3 is a drawing explaining the operation of the preferred embodiment. *Id*. at 2:32-33. Figure 3 "includes a console comprised of programming circuitry **16** and card reader **17**." *Id*. at 5:48-49. According to the Specification: "Control circuit **14** [sic, 11] operates interactively with the input/output interface **14**, examples including those associated with **7** and **8** of FIG. **2**, to communicate with the console." *Id*. at 5:35-38.

*C. Illustrative Claims*

Of the challenged claims, claims 1 and 5 are independent. As to the remaining challenged claims, claims 2-4, directly or indirectly, depend from claim 1, and claim 6 depends from claim 5. Claims 1 and 5 are illustrative of the claims at issue:

> 1. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:
>> a carrier having a planar surface;
>> a memory affixed to said carrier, for storing account data including account information for at least one account;

4

Case IPR2014-00156
Patent 6,764,005

> an emitter affixed to said carrier and programmed with account identifier information for transmitting account identifying information to said host system;
>
> a receiver affixed to said carrier for receiving account data including account information from said host system;
>
> a display affixed to said carrier for selectively displaying account information;
>
> a control circuit affixed to said carrier and coupled to each of said memory, said display and said receiver, said control circuit causing account data including account information received by said receiver from the host system to be stored in said memory and causing said account information stored in said memory to appear on said display; and
>
> a power source affixed to said carrier and coupled to at least one of said memory, said receiver, said emitter, said display and said control circuit;
>
> whereby, the use of the credit card on the host system allows the emitter to identify an account to the host system, the receiver to receive the particular account data including account information from the host system, the control circuit to cause the particular account data including account information to be stored in the memory and to cause said account information, consisting of all or a portion of said account data, to appear on the display.

Ex. 1001, 9:62-10:27.

> 5. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:
>
> substrate means to provide support for components of said apparatus;
>
> display means for presentation of said information, affixed to said substrate means;
>
> emitter means for transmission of said account data including account information to the host system, affixed to said substrate means;

Case IPR2014-00156
Patent 6,764,005

receiver means for receipt of said account data including account information from the host system, affixed to said substrate means;

memory means for storing at least one said account data including account information and upon activation recalling for display or transmission said account data including account information;

operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and display of said selected account data including account information, to and from the host system, into and from said memory means and on said display means, said operator interface means being affixed to said substrate means;

control circuit means for responding to said operator interface means by activating and driving the display means, interacting with the emitter means, interacting with the receiver means, and interacting with the memory means, said control circuit means being affixed to said substrate means and electrically connected to said memory means, said display means, said emitter means, said receiver means and said operator interface means;

power source means for providing electrical power said power source means being affixed to said substrate means and electrically connected to at least one of said control circuit means, said operator interface means, said emitter means, said receiver means, said memory means and said display means;

whereby, when the credit card is coupled to a host account system, selected account data including account information stored in memory on the card can be transmitted to the host account system, selected account data including account information on the host account system can be transmitted to and received by the card and stored in memory and selected account information received from the host system or stored on the card memory can be selectively displayed for the user of the card.

Ex. 1001, 10:52-12:14.

Case IPR2014-00156
Patent 6,764,005

### D. Prior Art Relied Upon by Petitioner

| Pitroda | US 5,590,038 | Dec. 31, 1996 | Ex. 1004 |
| Hennige | US 5,276,311 | Jan. 4, 1994 | Ex. 1005 |
| Taylor | US 5,530,232 | June 25, 1996 | Ex. 1006 |
| Wallerstein | US 5,585,787 | Dec. 17, 1996 | Ex. 1007 |

### E. Asserted Grounds of Unpatentability

Petitioner challenges claims 1-6 of the '005 patent on the following grounds. Pet. 7.

| References | Basis | Claims Challenged |
| --- | --- | --- |
| Pitroda | § 102(e) | 1-6 |
| Hennige | § 102(a) | 1 |
| Hennige and Taylor | § 103(a) | 2-6 |
| Wallerstein and Taylor | § 103(a) | 1-6 |

## II. ANALYSIS

### A. Claim Construction

The Board interprets claims using the broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012). Under that construction, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire patent disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Nevertheless, a "claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of

Case IPR2014-00156
Patent 6,764,005

the disputed claim term in either the specification or prosecution history."
*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).
Such definitions must be set forth with reasonable clarity, deliberateness,
and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). In the
absence of such a special definition or other consideration, "limitations are
not to be read into the claims from the specification." *In re Van Geuns*, 988
F.2d 1181, 1184 (Fed. Cir. 1993).

### 1. Various Terms Reciting "Means"

Petitioner proposes that the several terms containing "means" in
claims 5-6 do not qualify as terms under 36 U.S.C. § 112, sixth paragraph.
Pet. 8-9. Patent Owner does not address this proposal directly, but instead
asserts that the Petition attempts "to construe the 'means' claims (5 and 6) as
not subject to means plus function treatment" and that Patent Owner "does
not need to address that contention in this Preliminary Response, since the
grounds for unpatentability may be rejected even assuming Square were
correct about claims 5 and 6." Prelim. Resp. 8.

It is well established that the use of the term "means" triggers a
rebuttable presumption that § 112, ¶ 6[2] governs the construction of the claim
term. *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350,
1356 (Fed. Cir. 2011) (citing *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256,
1259 (Fed. Cir. 2008)). However, the presumption that § 112, ¶ 6 applies is
overcome if the claim itself recites sufficient structure or material for

---

[2] Section 4(c) of the America Invents Act, Pub. L. No. 112-29, § 4(c)
("AIA") re-designated 35 U.S.C. § 112, sixth paragraph, as 35 U.S.C.
§ 112(f). Because the '005 patent has a filing date prior to September 16,
2012, the effective date of the AIA, we refer to the pre-AIA version of
35 U.S.C. § 112.

Case IPR2014-00156
Patent 6,764,005

performing the claimed function. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997) ("[W]here a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format."). Merely because a named element of a patent claim is followed by the word "means," does not automatically make that element a "means-plus-function" element under 35 U.S.C. § 112, ¶ 6. *Cole v. Kimberly-Clark Corp.*, 102 F. 3d 524, 531 (Fed. Cir. 1996). Therefore, "[u]ltimately, whether claim language invokes § 112, ¶ 6 depends on how those skilled in the art would understand the structural significance of that claim language . . . ." *Inventio AG*, 649 F.3d. at 1360.

Petitioner argues that the subject claim terms incorporating "means," namely "substrate means, display means, emitter means, receiver means, memory means, operator interface means, control circuit means, power source means, and account identifier means" equate to, respectively, "a substrate, a display, an emitter, a receiver, a memory, an operator interface, a control circuit[,] a power source, and account identifier," all of which have well understood meanings in the art. Pet. 9. On this record, we are persuaded by Petitioner's argument and Declaration that each limitation that includes the term "means" is prefaced by a specific recitation of a structural component, known to one of ordinary skill in the art, that is sufficient to perform the recited function. Ex. 1008, page 12, ¶ 22. That is, one of ordinary skill in the art would recognize that a display, an emitter, a receiver, a memory, an operator interface, a control circuit, a power source, and an account identifier are structural components. Given the familiarity that one of ordinary skill in the art would have with these components, we do not

9

Case IPR2014-00156
Patent 6,764,005

construe the "means" terms of claim 5 and 6 as means-plus-function elements under § 112, ¶ 6.

### 2. "Host System"

Patent Owner proposes that the term "host system" be construed as "a device outside the universal credit card that hosts credit card related services and, through bidirectional communication, provides the operator access to them." Prelim. Resp. 8-9. In support of its position, Patent Owner argues: "The description of the 'console' informs the proper construction of a 'host system.' The console is a device external to the credit card apparatus that hosts credit card related services, and provides an operator access to them." *Id.* at 8. Petitioner did not discuss the meaning of this term in the Petition.

Neither the term "host" nor the term "host system" appears in the '005 patent Specification, except in the claims. The host system, as recited in the claims, (i) provides and receives account data including account information to and from the credit card; and more specifically (ii) receives account-identifying information from an emitter affixed to the credit card carrier; and (iii) transmits account data including account information to a receiver affixed to the credit card carrier.

Accordingly, we interpret the term "host system," in the specific context of these claims, as "a system that receives account data from, and provides account data to, a credit card." The Patent Owner's construction is too narrow, because providing operator access to credit card related services is not necessary.

### 3. "Emitter"

Patent Owner proposes that the term "emitter" be construed as "a subsystem that transmits information wirelessly." *Id.* at 9. Petitioner did not

10

Case IPR2014-00156
Patent 6,764,005

discuss the meaning of this term in the Petition. The Specification indicates
that the emitter may be an infrared LED, antenna, coil, or transducer.
Ex. 1001, 5:11-12. However, the Specification does not prohibit use of a
non-wireless device. Thus, we do not adopt Patent Owner's proposal. For
the purposes of this Decision, we interpret the term "emitter" as a device that
transmits a signal conveying information to another device, and that is
recognizable to one of ordinary skill in the art as an emitter. *See also* Ex.
1008, pages 17-19, ¶ 26.

### B. Alleged Anticipation of Claims 1-6 Under 35 U.S.C. § 102(e), Based on Pitroda

Petitioner asserts that claims 1-6 are unpatentable under 35 U.S.C.
§ 102(e) as anticipated by Pitroda. Pet. 10-25.

*Claims 1 and 5*

With respect to the independent claims, Pitroda teaches a universal
electronic transaction card ("UET card" or "UETC"). Ex. 1004, Abst.

Case IPR2014-00156
Patent 6,764,005

Figure 3 of Pitroda is reproduced below:



**FIG. 3**

Figure 3 shows a block diagram of one embodiment of the UET card. *Id.* at 8:28-29. The UET card has a micro controller with associated RAM/ROM and Input/Output port management 33, as well as non-volatile RAM 34. *Id.* at 11:19-21. The UET card further includes LCD and touch screen display 30, wherein the touch screen portion of display 30 is large enough to enable a user to operate touch controls. *Id.* at 11:13-19.

12

Case IPR2014-00156
Patent 6,764,005

The system of Pitroda is depicted in Figure 2:



**FIG. 2**

Figure 2 is a block diagram illustrating one embodiment of a universal electronic transaction card system. *Id.* at 8:24-26. Figure 2 depicts UET card 20 in communication with communication interface unit ("CIU") 21. *Id.* at 9:55-56.

Concerning the claim requirement for a "host system," Petitioner alleges:

> The host system [of Pitroda] can include credit card institutions, banks, retailers, and personal computers (e.g., communication interface unit (CIU) 21, point of sale (POS) 23, home PC 24, and/or main central computer 26).

Pet. 12. Patent Owner contends that "[t]he sole device [Petitioner] asserts to be a 'host system' is the CIU," and the CIU is a "passive interface." Prelim. Resp. 13. Petitioner, however, identifies a number of interconnected devices as the "host system." Pet. 12. Patent Owner does not address the other devices identified by Petitioner. Moreover, Pitroda's CIU may have "more

13

Case IPR2014-00156
Patent 6,764,005

features" than a passive interface with the UET card. Ex. 1004, 5:8-13 (stating CIU may include "a modem, means for processing information, means for storing information, input means for entering information, and display means for displaying information"). Thus, on this record, we are persuaded by Petitioner that Pitroda discloses a host system as described in claims 1 and 5.

With respect to the remaining elements of claims 1 and 5, Petitioner argues that Pitroda discloses a carrier or substrate, shown in Figure 1. *Id.* at Fig. 1. Petitioner further argues that Pitroda discloses a memory affixed to said carrier or substrate for storing account data including account information for at least one account, identified by Petitioner as RAM, ROM, and/or non-volatile RAM. Pet. 13, 22; Ex. 1004, Fig. 3, element 34.

Petitioner argues that Pitroda discloses an emitter, namely, pin contacts 13 or 38, or infrared (IR) or radio frequency (RF) option 39. Pet. 14; Ex. 1004, Fig. 3, element 38 (pins contact), element 39 (IR or RF option). Patent Owner contends that "the only disclosure of such information being 'emitted' uses mechanical contacts, which is not a permissible 'emitter' under the plain language of claims 1-6." Prelim. Resp. 13. However, for reasons set forth above, we disagree with Patent Owner's proposed claim construction which would limit "emitter" to wireless communications. Moreover, Patent Owner does not discuss the disclosed infrared/radio frequency emitters of Pitroda, which are disclosed as an alternative to the metal or mechanical contacts. Ex. 1004, 9:54-63. On this record, we are persuaded by Petitioner that the elements identified by Petitioner correspond to the emitter required by the claims.

14

Case IPR2014-00156
Patent 6,764,005

Petitioner argues that Pitroda discloses a receiver, namely, contacts 13
or 38, Ex. 1004, 9:36-37, 11:24-26, or an infrared/radio frequency option 39.
Pet. 14-15, 21-22; Ex. 1004, 9:54-63, 11:25-26.

Petitioner argues that Pitroda discloses a display, affixed to said
carrier or substrate, for selectively displaying account information, namely,
the LCD display portion of LCD + touch screen display 30.  Pet. 15, 21;
Ex. 1004, Fig. 3, element 30.

With respect to claim 1, Petitioner argues that the control circuit of
Pitroda is the microcontroller of Figure 3, which is coupled to said memory
(RAM, ROM or non-volatile RAM 34), said display (LCD display portion
of LCD + touch screen display 30); and said receiver (IR or RF option 39, or
pin contacts 13 or 38).  Pet. 15-16, 23; Ex. 1004, Fig. 3.  With respect to
claim 5, Petitioner further argues that the microcontroller of Figure 3
interacts with the display means (LCD + touch screen display 30), emitter
means (IR or RF option 39, or pin contacts 13 or 38), receiver means (IR or
RF option 39, or pin contacts 13 or 38), and memory means (RAM, ROM or
non-volatile RAM 34).  Pet 23; Ex. 1004, Fig. 3.

Petitioner argues that Pitroda discloses a power source, affixed to the
carrier or substrate, and coupled to at least one of said memory, said
receiver, said emitter, said display, and said operator interface, namely,
battery B+.  Pet. 16, 23-24; Ex. 1004, Fig. 3.

With respect to claim 5, Petitioner argues that Pitroda discloses an
operator interface, namely, the touch screen portion of LCD + touch screen
display 30.  Pet. 22; Ex. 1004, Fig. 3.

Apart from the abovementioned arguments directed to the "emitter"
and the "host system," Patent Owner does not specifically address the claim

Case IPR2014-00156
Patent 6,764,005

limitations identified by Petitioner. On this record, we are persuaded by Petitioner's arguments that Pitroda discloses the limitations of the independent claims 1 and 5 of the '005 patent.

*Dependent Claims 2-4 and 6*

We turn to the dependent claims challenged as anticipated by Pitroda. Patent Owner does not specifically address dependent claims 2-4 and 6 in its Preliminary Response.

As to claim 2, Petitioner argues that Pitroda discloses an operator interface affixed to the carrier and connected to the control circuit, namely, touch screen portion of LCD + touch screen display 30. Pet. 18; Ex. 1004, Fig. 3, element 30. Petitioner argues that the touch screen display allows the user to select an account location in the memory in which account data including account information received from the host system is to be stored and which account information is displayed on the display. Pet. 18; Ex. 1004, Figs. 13, 14. Petitioner also argues that Pitroda discloses a graphic image associated with and stored in the memory with reference to each account, identified by Petitioner as being shown graphically on display 30 in Fig. 13. Pet. 19; Ex. 1004, Fig. 13.

As to claim 3, Petitioner argues that Pitroda discloses at least one account identifier associated with and stored in said memory with reference to each account, namely, the graphical images of Figure 13 tied to different credit card accounts. Pet. 19; Ex. 1004, Fig. 13, 13:59-14:8. The user can select the account to be used by specifying the account identifier of the account. Pet. 19-20; Ex. 1004, Figs. 13, 14, 16:21-25.

As to claim 4, Petitioner argues that Pitroda discloses that the operator interface provides a key pad consisting of at least one key, namely, the touch

16

Case IPR2014-00156
Patent 6,764,005

screen portion of LCD + touch screen display 30.  Pet. 20, Ex. 1004,
Figs. 11, 14.

As to claim 6, Petitioner argues that Pitroda discloses account
identifiers allowing the user to direct account data through the operator
interface by reference to the account identifiers, namely, the portion of the
touch screen display for selecting each card in Figure 13.  Pet. 24-25;
Ex. 1004, Figs. 13, 14.

On this record, we are persuaded by Petitioner's arguments that
Pitroda discloses the limitations of dependent claims 2-4 and 6 of the '005
patent.

*Conclusion*

Based on the information presented, Petitioner has demonstrated a
reasonable likelihood that it would prevail in showing challenged claims 1-6
are unpatentable as anticipated by Pitroda.

*C. Alleged Anticipation of Claim 1 Under 35 U.S.C. § 102(a), Based on
Hennige*

Petitioner asserts that claim 1 is unpatentable under 35 U.S.C.
§ 102(a) as anticipated by Hennige.  In support, Petitioner sets forth
teachings of Hennige relative to claim 1, and the Declaration of Henry N.
Dreifus, Ex. 1008, explaining how each claim limitation is disclosed in
Hennige.  Pet. 25-31.  However, we determine that Petitioner has failed to
demonstrate a reasonable likelihood that it would prevail in showing that
claim 1 is unpatentable as anticipated by Hennige.  *Id.*; Ex. 1005.

We are not persuaded by Petitioner that Hennige discloses a host
system that anticipates a host system as recited in independent claim 1.

Case IPR2014-00156
Patent 6,764,005

Petitioner contends that Hennige discloses a "host system, e.g., a master unit 15 including a checking terminal." Pet. 27; Ex. 1005, Fig. 2, 4:49-53. The exact language of Hennige upon which Petitioner relies is: "a checking terminal of the master unit." Pet. 26; Ex. 1005, 4:49. Patent Owner responds that the "master unit" and the "checking terminal" are "two completely distinct units." Prelim. Resp. 15.

The language of Hennige upon which Petitioner relies, i.e., "a checking terminal of the master unit," Pet. 26; Ex. 1005, 4:49, is inconsistent with the remainder of Hennige, which identifies the checking terminal and the master unit as two discrete structures. Ex. 1005, element 15, element 20, Figs. 3, 4. Other than the phrase "a checking terminal of the master unit" in Hennige at 4:49, Petitioner does not point to any other portions of Hennige that link the checking terminal and the master unit into one host system.

Hennige defines two separate units, i.e., the checking terminal shown in Figure 4, and the master terminal shown in Figure 3. The master terminal or master unit is the means by which the individual data sets of the original single-purpose cards can be transferred to the multi-function card. Ex. 1005, 3:55-58, Figs. 1, 3. Hennige provides that "the user of a multi-function card may introduce all his single-purpose cards **20**, **21**, **22** . . . one by one into *his* master unit **15** . . . ." *Id*. at 5:16-18 (emphasis added). Hennige further provides: "If the user does not yet own an electronic multi-function card and a corresponding master unit, as shown in FIG. **3**, the issuing party may also deliver to the user such a multi-function card together with the master unit." *Id*. at 6:42-46. Conversely, the checking terminal is located at the "respective point of use, i.e. in the department store, restaurant, or the like," *id*. at 2:53-54, and receives the electronic multi-function card in slot 21a

18

Case IPR2014-00156
Patent 6,764,005

when the user wishes to pay an invoice using his card. *Id*. at 7:9-36. Thus, reading the reference as a whole, we conclude that the phrase "a checking terminal of the master unit" is not an accurate portrayal of the checking terminal or the master unit of Hennige. Petitioner has not accounted for the multitude of contrary evidence in the disclosure of Hennige indicating the checking terminal and the master unit are two separate components, performing different functions.

The Patent Owner asserts that the programming operation wherein the master unit takes in pre-existing single-use chip cards and extracts their data, and receives the multi-use card and places such extracted data into it, "only requires (and only describes) one-way transmission of data at the 'master unit' – into the card." Prelim. Resp. 15. The claims, by contrast, require bidirectional transmission to and from a host system. Specifically, the claims require the emitter to send "to a host system" and the receiver to receive "from said host system." We have determined, *supra*, that the master unit and the checking unit are separate devices rather than a single host system. We agree with Patent Owner that Hennige only describes one-way transmission of data from the master unit into the card. Thus, the master unit cannot be the "host system" required by claim 1. Similarly, Hennige only describes one-way transmission of data from the multi-function card to the checking terminal, so the checking terminal cannot be the "host system" required by claim 1.

Accordingly, Petitioner has failed to demonstrate a reasonable likelihood that it would prevail in showing that claim 1 is unpatentable as anticipated by Hennige.

Case IPR2014-00156
Patent 6,764,005

### D. *Alleged Obviousness of Claims 2-6 Under 35 U.S.C. § 103(a), Based on Hennige and Taylor*

Petitioner contends that claims 2-6 are unpatentable over the combination of Hennige and Taylor. Pet. 31-43. Specifically, Petitioner contends that it would have been obvious to one of ordinary skill "to modify *Hennige*'s electronic multi-function card and master unit 15" to include the feature of "receiv[ing] account data including account information from the host to be stored in memory and which account information is displayed on the display." Pet. 31. This is a requirement of dependent claim 2, from which claims 3 and 4 depend, and of independent claim 5, from which claim 6 depends.

Claims 2-4 depend, directly or indirectly, from claim 1. Petitioner's reliance on Taylor does not cure the deficiency of Hennige as we have discussed above regarding the host system of claim 1. Accordingly, Petitioner has not shown a reasonable likelihood that it would prevail in showing unpatentability of claims 2-4 over Hennige and Taylor.

Independent claim 5, like claim 1 discussed above, contains a 'host system' limitation. The discussion of the deficiencies of Hennige with respect to the host system apply to claim 5 as well as to claim 1. Petitioner's reliance on Taylor does not cure the deficiency of Hennige with respect to the host system of claim 5. Accordingly, Petitioner has not shown a reasonable likelihood that it would prevail in showing unpatentability of claims 5 and 6 over Hennige and Taylor.

20

Case IPR2014-00156
Patent 6,764,005

### E. Alleged Obviousness of Claims 1-6 Under 35 U.S.C. § 103(a), Based on Wallerstein and Taylor

Petitioner contends that claims 1-6 are unpatentable over the combination of Wallerstein and Taylor. Pet. 43-59. Wallerstein relates to a programmable credit card that enables accessing of a selected one of a plurality of different credit card accounts. Ex. 1007, Abst. Figure 4 of Wallerstein is shown below:



## FIG. 4

Figure 4 is a block diagram of the circuits utilized in the credit card of Wallerstein. *Id.* at 4:32-33. Petitioner asserts that Wallerstein discloses, in part:

> a credit card (e.g., programmable credit card 10) having . . . *an emitter* (e.g., magnetic strip control circuit 54 and programmable inductor 55) programed with account information of a credit card, and *a receiver* (e.g., input/output port 53 at 5:7-10) for allowing terminal equipment to access the credit card's memory storing account and identification.

Case IPR2014-00156
Patent 6,764,005

Pet. 43-44 (emphases added). Petitioner identifies the "host system" as
"(e.g. card reading device 90 and/or credit card companies or to different
banks within the credit system of a credit company.)" *Id.* at 47. Petitioner
further contends that it would have been obvious to one of ordinary skill in
the art at the time of the invention to modify Wallerstein's programmable
credit card 10 and terminal based on Taylor to include the feature of
"receiv[ing] account data including account information from a host system"
and storing that received account data to memory. *Id.* at 44.

Patent Owner responds that Wallerstein discloses only point-of-sale
transactions, not any bidirectional communication with a host system.
Prelim. Resp. 20-21. Patent Owner also alleges that the card of Wallerstein
lacks any receiver whatsoever. *Id.* We are persuaded by Patent Owner's
contentions that Wallerstein does not disclose a "host system" as recited in
claims 1 and 5. Petitioner argues Wallerstein's card reading device 90
corresponds to the claimed host system. We are not persuaded, however,
that the Wallerstein card's input/output port 19[3] receives account data from
reading device 90. While port 19 is described as having an "input" feature,
Wallerstein's disclosure of the interaction between port 19 and reading
device 90 is limited to information being output from port 19 and received
by reading device 90. Ex. 1007, 5:7-10, 7:53-55. Petitioner's broad

---

[3] Petitioner also points to Wallerstein element 53 as a receiver. Pet. 44.
Wallerstein states that element 53 is an input/output port controller.
Ex. 1007, 5:49. Petitioner's Declarant states: "As shown in Fig. 4,
reproduced above, *Wallerstein* discloses that CPU 42 can process
information from I/O port 19 via I/O controller 53." Ex. 1008, page 120,
¶ 45. Thus, I/O controller 53 is simply an electronic component that
controls I/O port 19.

Case IPR2014-00156
Patent 6,764,005

reference to "credit card companies" and "different banks within the credit system of a credit company" as corresponding to the host system are similarly unpersuasive. *See* Pet. 47.

Petitioner additionally relies on Taylor to disclose "a credit card . . . that provides and receives account data including account information . . . from a host system." *Id*. at 47. Patent Owner argues that the combination would be improper, as none of Petitioner's assertions "suggests the addition of a receiver or bidirectional communication with a host system." Prelim. Resp. 22. We are persuaded by Patent Owner's argument.

An excerpt of Figure 2 in Taylor is shown below:



Figure 2 shows card reader/writer 14 which is compatible with both smart cards and magnetic stripe cards. Ex. 1006, 3:28-30, 4:14-22. Card reader 14 "is capable of reading not only the smart card **10**, which is inserted into a slot **16**, but also a conventional magnetic-stripe card **18**, which is inserted into a slot **20**." *Id*. at 4:14-19. In the case of a smart card, card reader 14 "is capable of writing on a cooperating smart card to update various records thereon." *Id*. at 4:19-20. However, in the case of magnetic-stripe card 18, "the updating of the records is done at a remote location . . . ." *Id*. at 4:20-22.

23

Case IPR2014-00156
Patent 6,764,005

Petitioner's Declarant states that "it would have been obvious to one of ordinary skill in the art at the time of the '005 patent, to modify the programmable credit card 10 of *Wallerstein* to receive account data including account information from a card reader, as taught in *Taylor* . . . ." Ex. 1008, page 139, ¶ 47. However, Petitioner has not sufficiently explained how the input/output port of Wallerstein, which is not disclosed as receiving anything, could be combined with an undefined structure in Taylor to result in a receiver for receiving account data from a host system. Nor has Petitioner explained how card reader 14 of Taylor could be combined with card reading device 90 of Wallerstein to result in a host system that communicates with both a receiver and an emitter.

Finally, in the absence of a host system that communicates with a receiver in Wallerstein, it is unclear how Taylor, which uses its card reader to write on smart cards but which updates magnetic-stripe card records at a remote location, discloses a host system as claimed in claims 1 and 5.

Based on the information presented, including the information submitted by the Patent Owner, Petitioner has not demonstrated a reasonable likelihood that it would prevail in showing claims 1-6 are unpatentable as obvious over Wallerstein and Taylor.

*F. Conclusion*

We conclude that Petitioner has demonstrated a reasonable likelihood of prevailing in proving the unpatentability of claims 1-6 of the '005 patent. At this stage of the proceeding, the Board has not made a final determination as to the patentability of any challenged claim.

24

Case IPR2014-00156
Patent 6,764,005

ORDER

Accordingly, it is

ORDERED that pursuant to 35 U.S.C. § 314, an *inter partes* review is hereby instituted as to whether claims 1-6 of the '005 patent are unpatentable under 35 U.S.C. § 102(e) as anticipated by Pitroda;

FURTHER ORDERED that no other ground of unpatentability is authorized for this *inter partes* review;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4 (2013), notice is hereby given of the institution of a trial; the trial commencing on the entry date of this Order; and

FURTHER ORDERED that an initial conference call with the Board is scheduled pursuant to the Board's Scheduling Order entered herewith. The parties are directed to the Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,765-66 (Aug. 14, 2012), for guidance in preparing for the initial conference call, and should be prepared to discuss any proposed changes to the Scheduling Order and any motions the parties anticipate filing during the trial.

Case IPR2014-00156
Patent 6,764,005

FOR PETITIONER:
Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com

FOR PATENT OWNER:
Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com