# Exhibit B

Trials@uspto.gov
571-272-7822

Paper 8
Entered: May 15, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

SQUARE, INC.
Petitioner

v.

J. CARL COOPER
Patent Owner

————————

Case IPR2014-00157
Patent 7,828,207

Before JAMESON LEE, GEORGE R. HOSKINS, and KRISTINA M. KALAN,
*Administrative Patent Judges.*

KALAN, *Administrative Patent Judge.*

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2014-00157
Patent 7,828,207

# I. INTRODUCTION

On November 18, 2013, Square, Inc. ("Petitioner") filed a Petition
("Pet.") to institute an *inter partes* review of claims 1 and 8-14 of U.S.
Patent No. 7,828,207 ("the '207 patent") pursuant to 35 U.S.C. § 311-319.
On February 25, 2014, J. Carl Cooper ("Patent Owner")[1] filed a Preliminary
Response ("Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 314.
The standard for instituting an *inter partes* review is set forth in 35 U.S.C.
§ 314(a):

> THRESHOLD – The Director may not authorize an inter partes
> review to be instituted unless the Director determines that the
> information presented in the petition filed under section 311
> and any response filed under section 313 shows that there is a
> reasonable likelihood that the petitioner would prevail with
> respect to at least 1 of the claims challenged in the petition.

Petitioner challenges claims 1 and 8-14 of the '207 patent as
anticipated under 35 U.S.C. § 102(a) and § 102(e), and as obvious under
35 U.S.C. § 103(a).  Pet. 7-8.  We grant the Petition as to claims 1 and 8-14
on certain grounds as discussed below.

## A. Related Proceedings

Patent Owner represents that the '207 patent is subject to pending
litigation (1) in the Northern District of Illinois (filed by eCharge Licensing
LLC against Petitioner, No. 1:13-cv-06445), Ex. 1003; and (2) in the District
of Massachusetts (filed by SCVNGR, Inc. against eCharge Licensing LLC,

---

[1] Prior Board filings in this proceeding have identified Patent Owner in the
caption as eCharge Licensing LLC.  Papers 5 and 6.  However, the record
indicates the '207 patent is owned by J. Carl Cooper, while eCharge
Licensing LLC is an exclusive licensee.  Prelim. Resp. 1.  Therefore, this
Decision identifies Mr. Cooper as the Patent Owner.

2

Case IPR2014-00157
Patent 7,828,207

No. 1:13-cv-12418).  Pet. 6.  Patent Owner indicates that, as of the date of

the filing of the Preliminary Response: (1) the Illinois court had granted an

agreed motion to stay, and (2) the Massachusetts court had not yet ruled on a

motion to stay filed by SCVNGR, Inc. and opposed by eCharge Licensing

LLC.  Prelim. Resp. 2.

### B.  The '207 Patent

The '207 patent "relates to the use of devices having information or

patterns carried in or on some storage media, examples of which include

photographic patterns, keys or the magnetic strip on credit cards."  Ex. 1001,

1:18–21.  Figure 2 of the '207 patent is reproduced below.



Figure 2 is a diagram of the preferred embodiment of the present invention,

dubbed a multi-card by the inventor, having plastic substrate 3, on which is

suitably mounted programmable magnetic strip 4, LCD display 5, solar cell

power source 6, infrared emitter 7, infrared sensor 8, and key pad 9.  *Id.* at

2:54-60.

3

Case IPR2014-00157
Patent 7,828,207

Figure 3 of the '207 patent is reproduced below:



Figure 3 is a drawing explaining the operation of the preferred embodiment. *Id*. at 2:32-33. Figure 3 "includes a console comprised of programming circuitry **16** and card reader **17**." *Id*. at 5:48-49. According to the Specification: "Control circuit **14** [sic, 11] operates interactively with the input/output interface **14**, examples including those associated with **7** and **8** of FIG. **2**, to communicate with the console." *Id*. at 5:35-38.

### C. Illustrative Claim

Of the challenged claims, claims 1, 8, 13, and 14 are independent. As to the remaining challenged claims, claims 9-12, directly or indirectly, depend from claim 8. Claim 1 of the '207 patent is illustrative of the claims at issue:

> 1. A universal credit card apparatus for providing and receiving account data including account information from a host system comprising:
>
> a carrier having a planar surface said carrier supporting the components of the apparatus;
>
> at least one memory device, chosen from the group consisting of volatile memory and nonvolatile memory, affixed

4

Case IPR2014-00157
Patent 7,828,207

> to said carrier, for storing account data including account
> information for at least one account;
>
> an emitter device, affixed to said carrier, programmed
> with account identifier information for wirelessly transmitting
> account identifying information to said host system; wherein
> the emitter device is configured to identify a user selected
> account to the host system;
>
> a receiver device, affixed to said carrier, for receiving
> account data including account information from said host
> system;
>
> a display device, affixed to said carrier, for selectively
> displaying account information;
>
> a control circuit, affixed to said carrier, coupled to said
> memory, to said display device and to said receiver device and
> which is operable to store account data including account
> information received by said receiver device from the host
> system into said memory and to cause said account information
> stored in said memory to appear on said display device;
>
> a power source, affixed to said carrier, and coupled to at
> least one of said memory, said receiver device, said display
> device and said control circuit.

Ex. 1001, 9:53-10:16.

### D.  Prior Art Relied Upon by Petitioner

| Pitroda | US 5,590,038 | Dec. 31, 1996 | Ex. 1004 |
|---|---|---|---|
| Hennige | US 5,276,311 | Jan. 4, 1994 | Ex. 1005 |
| Taylor | US 5,530,232 | June 25, 1996 | Ex. 1006 |
| Wallerstein | US 5,585,787 | Dec. 17, 1996 | Ex. 1007 |

### E.  Asserted Grounds of Unpatentability

Petitioner challenges claims 1 and 8-14 of the '207 patent on the

following grounds.  Pet. 8.

5

Case IPR2014-00157
Patent 7,828,207

| References | Basis | Claims Challenged |
|---|---|---|
| Pitroda | § 102(e) | 1 and 8-14 |
| Hennige | § 102(a) | 1, 8, 13, and 14 |
| Hennige and Taylor | § 103(a) | 9-12 |
| Wallerstein and Taylor | § 103(a) | 1 and 8-14 |

## II. ANALYSIS

### A. *Claim Construction*

The Board interprets claims using the broadest reasonable
construction in light of the specification of the patent in which they appear.
37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed.
Reg. 48,756, 48,766 (Aug. 14, 2012). Under that construction, claim terms
are given their ordinary and customary meaning, as would be understood by
one of ordinary skill in the art in the context of the entire patent disclosure.
*In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).
Nevertheless, a "claim term will not receive its ordinary meaning if the
patentee acted as his own lexicographer and clearly set forth a definition of
the disputed claim term in either the specification or prosecution history."
*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).
Such definitions must be set forth with reasonable clarity, deliberateness,
and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). In the
absence of such a special definition or other consideration, "limitations are
not to be read into the claims from the specification." *In re Van Geuns*, 988
F.2d 1181, 1184 (Fed. Cir. 1993).

Case IPR2014-00157
Patent 7,828,207

### 1. *"Universal Credit Card/Universal Credit Card Apparatus"*

Petitioner proposes that the term "universal credit card" or "universal credit card apparatus" be construed as "a financial transaction card storing a plurality of sets of patterns or information with each set corresponding to a different card account." Pet. 11. Patent Owner proposes that the term "universal credit card" or "universal credit card apparatus" be construed as "a device that allows access to more than one credit card account with just one device to carry, thereby eliminating the need to carry, store, remember or retain numerous credit cards." Prelim. Resp. 11.

Each of independent claims 1, 8, 13, and 14 recites a "universal credit card apparatus" in the preamble. The Specification does not define the term "universal credit card" or the term "universal credit card apparatus." The Specification does, however, describe a "single convenient card which a user may carry in order to replace a plurality of individual credit cards," Ex. 1001, 1:66-2:1, and provides a "diagram of the preferred embodiment of the present invention, dubbed a multi-card by the inventor." Ex. 1001, Figure 2, 2:54-55. Although the Patent Owner proposes that the subject terms be construed as a "device," no apparatus or device other than a card or a multi-card is identified in the Specification. Thus, we interpret the term "universal credit card" or "universal credit card apparatus" as "a card that allows access to more than one credit card account."

### 2. *"Transducer"*

Petitioner proposes that the term "transducer" be construed as "a device that converts a signal from one form of energy to another form of energy." Pet. 11. Patent Owner proposes that the term "transducer" not be construed in such a limited manner, as this definition would render

7

Case IPR2014-00157
Patent 7,828,207

superfluous the claim language reciting the rest of the permitted list of "emitters" in claims 8 and 13. Prelim. Resp. 9. Patent Owner urges that it is "reasonable to conclude that the inventor did not intend the term 'transducer' to swallow the rest of the terms in the list, and therefore intended the term to refer to those transducers other than antennae, coils, displays or photodiodes." *Id*.

A person of ordinary skill in the art would have recognized that a transducer is a device that converts one form of energy to another form of energy. *See* MICROSOFT COMPUTER DICTIONARY 527 (2d ed. 2002) ("**transducer *n.*** A device that converts one form of energy into another."). Thus, for the purposes of this opinion, we interpret the term transducer as a device recognizable to one of ordinary skill in the art as a "transducer" and capable of converting energy from one form to another.

### 3. "Host System"

Patent Owner proposes that the term "host system" be construed as "a device outside the universal credit card that hosts credit card related services and, through bidirectional communication, provides the operator access to them." Prelim. Resp. 8. In support of its position, Patent Owner argues: "The description of the 'console' informs the proper construction of a 'host system.' The console is a device external to the credit card apparatus that hosts credit card related services, and provides an operator access to them." *Id.* Petitioner did not discuss the meaning of this term in the Petition.

Neither the term "host" nor the term "host system" appears in the '207 patent Specification, except in the claims. The host system, as recited in the claims, (i) provides and receives account data including account information to and from the universal credit card apparatus; and more specifically (ii)

8

Case IPR2014-00157
Patent 7,828,207

receives account identifying information from an emitter device affixed to the universal credit card apparatus carrier; and (iii) transmits account data including account information to a receiver device affixed to the universal credit card apparatus carrier.

Accordingly, we interpret the term "host system," in the specific context of these claims, as "a system that receives account data from, and provides account data to, a universal credit card apparatus." The Patent Owner's construction is too narrow, because providing operator access to credit card related services is not necessary.

*4. "Emitter"*

Patent Owner proposes that the term "emitter" be construed as "a subsystem that transmits information wirelessly." Prelim. Resp. 9. Petitioner did not discuss the meaning of this term in the Petition. The Specification indicates that the emitter may be an infrared LED, antenna, coil, or transducer. Ex. 1001, 5:10-11. However, the Specification does not prohibit use of a non-wireless device. This is especially true given that claims 1 and 14 specify that the emitter is "for wirelessly transmitting," whereas claims 8 and 13 contain no such limitation. Thus, we do not adopt Patent Owner's proposal. For the purposes of this Decision, we interpret the term "emitter" as a device that transmits a signal conveying information to another device, and that is recognizable to one of ordinary skill in the art as an emitter. *See also* Ex. 1008, pages 19-21, 33, ¶ 27.

9

Case IPR2014-00157
Patent 7,828,207

### B. Alleged Anticipation of Claims 1 and 8-14 Under 35 U.S.C. § 102(e), Based on Pitroda

Petitioner asserts that claims 1 and 8-14 are unpatentable under 35 U.S.C. § 102(e) as anticipated by Pitroda. Pet. 12-24.

*Independent Claims 1, 8, 13, 14*

With respect to the independent claims, Pitroda teaches a universal electronic transaction card ("UET card" or "UETC"). Ex. 1004, Abst.

Figure 3 of Pitroda is reproduced below:



**FIG. 3**

Figure 3 shows a block diagram of one embodiment of the UET card. *Id.* at 8:28-29. The UET card has a micro controller with associated RAM/ROM and Input/Output port management 33, as well as non-volatile RAM 34. *Id.* at 11:19-21. The UET card further includes LCD and touch screen display 30, wherein the touch screen portion of display 30 is large enough to enable a user to operate touch controls. *Id.* at 11:13-19.

10

Case IPR2014-00157
Patent 7,828,207

The system of Pitroda is depicted in Figure 2:



**FIG. 2**

Figure 2 is a block diagram illustrating one embodiment of a universal electronic transaction card system. *Id.* at 8:24-26. Figure 2 depicts UET card 20 in communication with communication interface unit ("CIU") 21. *Id.* at 9:55-56.

Concerning the claim requirement for a "host system," Petitioner alleges:

> The host system [of Pitroda] can include credit card institutions, banks, retailers, and personal computers (e.g., communication interface unit (CIU) 21, point of sale (POS) 23, home PC 24, and/or main central computer 26).

Pet. 13. Patent Owner contends that "[t]he sole device [Petitioner] asserts to be a 'host system' is the CIU," and the CIU is a "passive interface." Prelim. Resp. 16. Petitioner, however, identifies a number of interconnected devices as the "host system. Pet. 13. Patent Owner does not address the other devices identified by Petitioner. Moreover, Pitroda's CIU may have "more

11

features" than a passive interface with the UET card. Ex. 1004, 5:8-13 (stating CIU may include "a modem, means for processing information, means for storing information, input means for entering information, and display means for displaying information"). Thus, on this record, we are persuaded by Petitioner that Pitroda discloses a host system as described in claims 1, 8, 13, and 14.

With respect to the remaining elements of the independent claims, Petitioner argues that Pitroda discloses a carrier having a planar surface and supporting the components of the apparatus, shown in Figure 1. *Id.* at Fig. 1. Petitioner further argues that Pitroda discloses a memory device for storing account data including account information for at least one account, identified by Petitioner as RAM, ROM, and/or non-volatile RAM. Pet. 15; Ex. 1004, Fig. 3, element 34.

Petitioner argues that Pitroda discloses an emitter, namely, pin contacts 13 or 38, or infrared (IR) or radio frequency (RF) option 39. Pet. 16-17; Ex. 1004, Fig. 3, element 38 (pins contact), element 39 (IR or RF option). Patent Owner contends that "the only disclosure of such information being 'emitted' uses mechanical contacts, which is not a permissible 'emitter' under the plain language of claims 1, 8, 13 or 14." Prelim. Resp. 15. However, for reasons set forth above, we disagree with Patent Owner's proposed claim construction which would limit "emitter" to wireless communications. Moreover, Patent Owner does not discuss the disclosed infrared/radio frequency emitters of Pitroda, which are disclosed as an alternative to the metal or mechanical contacts. Ex. 1004, 9:54-63. On this record, we are persuaded by Petitioner that the elements identified by Petitioner correspond to the emitter required by the claims.

Case IPR2014-00157
Patent 7,828,207

Petitioner argues that Pitroda discloses a receiver, namely, contacts 13 or 38, Ex. 1004, 9:36-37, 11:24-26, or an infrared/radio frequency option 39. Pet. 18; Ex. 1004, 9:54-63, 11:25-26.

Petitioner argues that Pitroda discloses a display, affixed to said carrier, for selectively displaying account information, namely, the LCD display portion of LCD + touch screen display 30. Pet. 18-19; Ex. 1004, Fig. 3, element 30.

Petitioner argues that the control circuit of Pitroda is the microcontroller of Figure 3, which is coupled to said memory (RAM, ROM or non-volatile RAM 34), said display (LCD display portion of LCD + touch screen display 30); and said receiver (IR or RF option 39, or pin contacts 13 or 38). Pet. 19, 23; Ex. 1004, Ex.1004, Fig. 3.

Petitioner argues that Pitroda discloses a power source, affixed to the carrier, and coupled to at least one of said memory, said receiver, said emitter, said display, and said control circuit, namely, battery B+. Pet. 20; Ex. 1004, Fig. 3.

Apart from the abovementioned arguments directed to the "emitter" and the "host system," Patent Owner does not specifically address the claim limitations identified by Petitioner. On this record, we are persuaded by Petitioner's arguments that Pitroda discloses the limitations of the independent claims 1, 8, 13 and 14 of the '207 patent.

*Dependent Claims 9-12*

We turn to the dependent claims challenged as anticipated by Pitroda. Patent Owner does not specifically address dependent claims 9-12 in its Preliminary Response.

13

Case IPR2014-00157
Patent 7,828,207

As to claim 9, Petitioner argues that Pitroda discloses an operator interface affixed to the carrier and connected to the control circuit, namely, touch screen portion of LCD + touch screen display 30. Pet. 20; Ex. 1004, Fig. 3, element 30. Petitioner argues that the touch screen display allows the user to select an account location in the memory in which account data including account information received from the host system is to be stored. Pet. 21; Ex. 1004, Figs. 13, 14.

As to claim 10, Petitioner alleges that Pitroda discloses at least one account identifier associated with and stored in the memory, namely, the graphical images of Figure 13 tied to different credit card accounts. Pet. 21-22; Ex. 1004, Fig. 13. Petitioner further argues that the user can select the account to be used by specifying the account identifier of the account, namely, the images shown in Figure 13, resulting in displaying of account information as shown in Figure 14. Pet. 22; Ex. 1004, Figs. 13, 14, 16:21-25.

As to claim 11, Petitioner argues that Pitroda discloses that a user may select an account location in the memory, causing account information to be displayed on the display device, namely, touch screen display 30. Pet. 22-23; Ex. 1004, Fig. 3, element 30 (touch screen display), 16:21-15.

As to claim 12, Petitioner argues that Pitroda discloses at least one account identifier associated with and stored in said memory with reference to each account, namely, the graphical images of Figures 13 and 14. Pet. 23-24; Ex. 1004, Fig. 13, 13:59-14:8.

On this record, we are persuaded by Petitioner's arguments that Pitroda discloses the limitations of dependent claims 9-12 of the '207 patent.

Case IPR2014-00157
Patent 7,828,207

*Conclusion*

Based on the information presented, Petitioner has demonstrated a reasonable likelihood that it would prevail in showing challenged claims 1 and 8-14 are unpatentable as anticipated by Pitroda.

### C. Alleged Anticipation of Claims 1, 8, 13, and 14 Under 35 U.S.C. § 102(a), Based on Hennige

Petitioner asserts that claims 1, 8, 13, and 14 are unpatentable under 35 U.S.C. § 102(a) as anticipated by Hennige. In support, Petitioner sets forth teachings of Hennige relative to claims 1, 8, 13, and 14, and the Declaration of Henry N. Dreifus, Ex. 1008, explaining how each claim limitation is disclosed in Hennige. Pet. 24-31. However, we determine that Petitioner has failed to demonstrate a reasonable likelihood that it would prevail in showing that claims 1, 8, 13 and 14 are unpatentable as anticipated by Hennige. *Id.*; Ex. 1005.

We are not persuaded by Petitioner that Hennige discloses a host system that anticipates a host system as recited in independent claims 1, 8, 13, and 14. Petitioner contends that Hennige discloses a "host system, e.g., a master unit 15 including a checking terminal." Pet. 25; Ex. 1005, Fig. 2, 4:49-53. The exact language of Hennige upon which Petitioner relies is: "a checking terminal of the master unit." Pet. 25; Ex. 1005, 4:49. Patent Owner responds that the "master unit" and the "checking terminal" are "two completely distinct units." Prelim. Resp. 18.

The language of Hennige upon which Petitioner relies, i.e., "a checking terminal of the master unit," Pet. 25; Ex. 1005, 4:49, is inconsistent with the remainder of Hennige, which identifies the checking terminal and

the master unit as two discrete structures. Ex. 1005, element 15, element 20, Figs. 3, 4. Other than the phrase "a checking terminal of the master unit" in Hennige at 4:49, Petitioner does not point to any other portions of Hennige that link the checking terminal and the master unit into one host system.

Hennige defines two separate units, i.e., the checking terminal shown in Figure 4, and the master terminal shown in Figure 3. The master terminal or master unit is the means by which the individual data sets of the original single-purpose cards can be transferred to the multi-function card. Ex. 1005, 3:55-58, Figs. 1, 3. Hennige provides that "the user of a multi-function card may introduce all his single-purpose cards **20**, **21**, **22** . . . one by one into *his* master unit **15** . . . ." *Id.* at 5:16-18 (emphasis added). Hennige further provides: "If the user does not yet own an electronic multi-function card and a corresponding master unit, as shown in FIG. **3**, the issuing party may also deliver to the user such a multi-function card together with the master unit." *Id.* at 6:42-46. Conversely, the checking terminal is located at the "respective point of use, i.e. in the department store, restaurant, or the like," *id*. at 2:53-54, and receives the electronic multi-function card in slot 21a when the user wishes to pay an invoice using his card. *Id*. at 7:9-36. Thus, reading the reference as a whole, we conclude that the phrase "a checking terminal of the master unit" is not an accurate portrayal of the checking terminal or the master unit of Hennige. Petitioner has not accounted for the multitude of contrary evidence in the disclosure of Hennige indicating the checking terminal and the master unit are two separate components, performing different functions.

The Patent Owner asserts that the programming operation wherein the master unit takes in pre-existing single-use chip cards and extracts their data,

Case IPR2014-00157
Patent 7,828,207

and receives the multi-use card and places such extracted data into it, "only requires (and only describes) one-way transmission of data at the 'master unit' – into the card." Prelim. Resp. 18. The claims, by contrast, require bidirectional transmission to and from a host system. Specifically, the claims require the emitter to send "to a host system" and the receiver to receive "from said host system." We have determined, *supra*, that the master unit and the checking unit are separate devices rather than a single host system. We agree with Patent Owner that Hennige only describes one-way transmission of data from the master unit into the card. Thus, the master unit cannot be the "host system" required by claim 1. Similarly, Hennige only describes one-way transmission of data from the multi-use card to the checking terminal, so the checking terminal cannot be the "host system" required by claim 1.

Accordingly, Petitioner has failed to demonstrate a reasonable likelihood that it would prevail in showing that claims 1, 8, 13, or 14 are unpatentable as anticipated by Hennige.

*D. Alleged Obviousness of Claims 9-12 Under 35 U.S.C. § 103(a), Based on Hennige and Taylor*

Petitioner contends that claims 9-12 are unpatentable over the combination of Hennige and Taylor. Pet. 31-37. Specifically, Petitioner contends that it would have been obvious to one of ordinary skill "to modify *Hennige*'s electronic multi-function card and master unit 15" to include the feature of "receiv[ing] account data including account information from the host to be stored in memory and which account information is displayed on the display." Pet. 31.

17

Case IPR2014-00157
Patent 7,828,207

Claims 9-12 depend, directly or indirectly, from claim 8. Petitioner's reliance on Taylor does not cure the deficiency of Hennige, as we have discussed above, regarding the host system of claim 8. Accordingly, Petitioner has not shown a reasonable likelihood that it would prevail in showing unpatentability of claims 9-12 over Hennige and Taylor.

*E. Alleged Obviousness of Claims 1 and 8-14 Under 35 U.S.C. § 103(a), Based on Wallerstein and Taylor*

Petitioner contends that claims 1 and 8-14 are unpatentable over the combination of Wallerstein and Taylor. Pet. 38-52. Wallerstein relates to a programmable credit card that enables accessing of a selected one of a plurality of different credit card accounts. Ex. 1007, Abst. Figure 4 of Wallerstein is shown below:



**FIG. 4**

Case IPR2014-00157
Patent 7,828,207

Figure 4 is a block diagram of the circuits utilized in the credit card of
Wallerstein.  *Id.* at 4:32-33.  Petitioner asserts that Wallerstein discloses, in
part:

> a credit card (e.g., programmable credit card 10) having . . . *an
> emitter* (e.g., magnetic strip control circuit 54 and
> programmable inductor 55) programed with account
> information of a credit card, and *a receiver* (e.g., input/output
> port 53 at 5:7-10) for allowing terminal equipment to access the
> credit card's memory storing account and identification.

Pet. 38 (emphases added).  Petitioner identifies the "host system" as "(e.g.
card reading device 90 and/or credit card companies or to different banks
within the credit system of a credit company.)"  *Id*. at 41.  Petitioner further
contends that it would have been obvious to one of ordinary skill in the art at
the time of the invention to modify Wallerstein's programmable credit card
10 and terminal based on Taylor to include the feature of "receiv[ing]
account data including account information from a host system" and storing
that received account data to memory.  *Id*. at 38-39.

Patent Owner responds that Wallerstein discloses only point-of-sale
transactions, not any bidirectional communication with a host system.
Prelim. Resp. 22.  Patent Owner also alleges that the card of Wallerstein
lacks any receiver whatsoever.  *Id*.  We are persuaded by Patent Owner's
contentions that Wallerstein does not disclose a "host system" as recited in
claims 1 and 8-14.  Petitioner argues Wallerstein's card reading device 90
corresponds to the claimed host system.  We are not persuaded, however,
that the Wallerstein card's input/output port 19[2] receives account data from

---

[2] Petitioner also points to Wallerstein element 53 as a receiver.  Pet. 38.
Wallerstein states that element 53 is an input/output port controller.

Case IPR2014-00157
Patent 7,828,207

reading device 90. While port 19 is described as having an "input" feature,
Wallerstein's disclosure of the interaction between port 19 and reading
device 90 is limited to information being output from port 19 and received
by reading device. Ex. 1007, 5:7-10, 7:53-55. Petitioner's broad reference
to "credit card companies" and "different banks within the credit system of a
credit company" as corresponding to the host system are similarly
unpersuasive. *See* Pet. 41.

Petitioner additionally relies on Taylor to disclose "a credit card . . .
that provides and receives account data including account information . . .
from a host system." *Id*. at 43. Patent Owner argues that the combination
would be improper, as none of Petitioner's assertions "suggests the addition
of a receiver or bidirectional communication with a host system." Prelim.
Resp. 24. We are persuaded by Patent Owner's argument.

An excerpt of Figure 2 in Taylor is shown below:



<hr />

Ex. 1007, 5:49. Petitioner's Declarant states: "As shown in Fig. 4,
reproduced above, *Wallerstein* discloses that CPU 42 can process
information from I/O port 19 via I/O controller 53." Ex. 1008, page 146,
¶ 50. Thus, I/O controller 53 is simply an electronic component that
controls I/O port 19.

Case IPR2014-00157
Patent 7,828,207

Figure 2 shows card reader / writer 14 which is compatible with both smart cards and magnetic stripe cards.  Ex. 1006, 3:28-30, 4:14-22.  Card reader 14 "is capable of reading not only the smart card **10**, which is inserted into a slot **16**, but also a conventional magnetic-stripe card **18**, which is inserted into a slot **20**." *Id*. at 4:14-19.  In the case of a smart card, card reader 14 "is capable of writing on a cooperating smart card to update various records thereon." *Id*. at 4:19-20.  However, in the case of magnetic-stripe card 18, "the updating of the records is done at a remote location . . . ." *Id*. at 4:20-22.

Petitioner's Declarant states that "it would have been obvious to one of ordinary skill in the art at the time of the '207 patent, to modify the programmable credit card 10 of *Wallerstein* to receive account data including account information from a card reader, as taught in *Taylor* . . . ." Ex. 1008, page 137, ¶ 50.  However, Petitioner has not sufficiently explained how the input/output port of Wallerstein, which is not disclosed as receiving anything, could be combined with an undefined structure in Taylor to result in a receiver for receiving account data from a host system.  Nor has Petitioner explained how card reader 14 of Taylor could be combined with card reading device 90 of Wallerstein to result in a host system that communicates with both a receiver and an emitter.

Finally, in the absence of a host system that communicates with a receiver in Wallerstein, it is unclear how Taylor, which uses its card reader to write on smart cards but which updates magnetic-stripe card records at a remote location, discloses a host system as claimed in claims 1 and 8-14.

Based on the information presented, including the information submitted by the Patent Owner, Petitioner has not demonstrated a reasonable

Case IPR2014-00157
Patent 7,828,207

likelihood that it would prevail in showing claims 1 and 8-14 are unpatentable as obvious over Wallerstein and Taylor.

*F. Conclusion*

We conclude that Petitioner has demonstrated a reasonable likelihood of prevailing in proving the unpatentability of claims 1 and 8-14 of the '207 patent. At this stage of the proceeding, the Board has not made a final determination as to the patentability of any challenged claim.

ORDER

Accordingly, it is

ORDERED that pursuant to 35 U.S.C. § 314, an *inter partes* review is hereby instituted as to whether claims 1 and 8-14 of the '207 patent are unpatentable under 35 U.S.C. § 102(e) as anticipated by Pitroda;

FURTHER ORDERED that no other ground of unpatentability is authorized for this *inter partes* review; and

FURTHER ORDERED that an initial conference call with the Board is scheduled for 1 PM Eastern Time on June 16, 2014. The parties are directed to the Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,765-66 (Aug. 14, 2012), for guidance in preparing for the initial conference call, and should be prepared to discuss any proposed changes to the Scheduling Order entered herewith and any motions the parties anticipate filing during the trial.

Case IPR2014-00157
Patent 7,828,207

FOR PETITIONER:
Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com

FOR PATENT OWNER:
Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com