# Exhibit C

Trials@uspto.gov                                                    Paper 10
Tel: 571-272-7822                                        Entered:  May 15, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

SQUARE, INC.
Petitioner

v.

J. CARL COOPER
Patent Owner
_____

Case IPR2014-00158
Patent 8,490,875
_____

Before JAMESON LEE, GEORGE R. HOSKINS, and KRISTINA M. KALAN,
*Administrative Patent Judges.*

HOSKINS, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2014-00158
Patent 8,490,875

## I.     INTRODUCTION

On November 18, 2013, Square, Inc. ("Petitioner") filed a Petition (Paper 2, "Pet.") requesting *inter partes* review of U.S. Patent No. 8,490,875 (Ex. 1001, "the '875 patent").  J. Carl Cooper ("Patent Owner")[1] filed a Preliminary Response (Paper 8, "Prelim. Resp.") on February 25, 2014.  We have jurisdiction under 35 U.S.C. § 314 and 37 C.F.R. § 42.108 (2013).

The standard for instituting an *inter partes* review is:

THRESHOLD.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

35 U.S.C. § 314(a).

Petitioner contends claims 1-14 and 16-34 of the '875 patent are unpatentable under 35 U.S.C. §§ 102 and 103.  *See* Pet. 9-11.  For the following reasons, and taking into account Patent Owner's Preliminary Response, we determine Petitioner has shown a reasonable likelihood that Petitioner would prevail with respect to claims 1-7, 9-14, 16-31, 33, and 34.  Therefore, pursuant to 35 U.S.C. § 314(a), we institute an *inter partes* review as to those claims.

---

[1] Prior Board filings in this proceeding have identified Patent Owner in the caption as eCharge Licensing LLC.  *See* Papers 6, 7.  However, the record indicates the '875 patent is owned by J. Carl Cooper, while eCharge Licensing LLC is an exclusive licensee.  *See* Paper 5, at 2; Prelim. Resp. 1.  Therefore, this decision identifies Mr. Cooper as the Patent Owner.

Case IPR2014-00158
Patent 8,490,875

### A. The '875 Patent

The '875 patent discloses a "universal credit card" apparatus for allowing "access to numerous accounts, services, features, etc. with just one card thereby eliminating the need to carry, store or retain numerous cards." Ex. 1001, title and 3:42-46. Such an apparatus may also perform other functions, for example telephone functions. *See id.* at 3:46-50. Figure 8 of the '875 patent is reproduced below.



# Figure 8

Figure 8 shows a schematic of a telephone. *See id.* at 2:46-47. It includes control circuit 11, display 12, operator interface 13, input/output interface 14, and power source 15. Control circuit 11 includes a memory (not shown in Figure 8) and controls the other components of the apparatus. *See id.* at 4:9-13.

Input/output interface 14 includes an emitter and a receiver. *See id.* at 5:15-21, 5:40-43. The emitter may, for example, be an infrared LED, an antenna, a coil, a transducer, or a display. *See id.* at 5:15-17, 5:25-26. The receiver may, for

Case IPR2014-00158
Patent 8,490,875

example, be a photo transistor, a magnetic reader strip, or an operator interface. *See id.* at 5:18-21, 5:23-24, 4:39, 5:30.

Information stored in the memory of control circuit 11 may include "several sets of data corresponding to account related information or patterns for different credit cards, identification cards and the like." *Id.* at 3:10-13. The information may include account numbers, bar codes, and security codes. *See id.* at 1:46-47, 2:1-7.

### B. Illustrative Claim

Claim 1 is illustrative of challenged claims 1-14 and 16-34:

1. An apparatus comprising:
in a telephone:
    a control circuit;
    a memory coupled to the control circuit, the memory configured
      to store information related to at least one credit card account;
    a designator for selecting the information from the memory;
    a display coupled to the control circuit and configured to display
      at least part of the information upon selection of the
      designator; and
    an emitter coupled to the control circuit and configured to
      transmit a signal relating to the information, the emitter
      comprising at least one of an antenna, coil, a transducer, the
      display, and an infrared LED.

Ex. 1001, 9:60-10:7.

### C. Related Matters

Petitioner and Patent Owner have each identified two related district court proceedings involving the '875 patent: *eCharge Licensing, LLC v. Square, Inc.*, No. 1:13-cv-06445 (N.D. Ill.), and *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 1:13-cv-12418 (D. Mass.). *See* Pet. 7-8; Prelim. Resp. 2-3; Paper 5, at 2.

Case IPR2014-00158
Patent 8,490,875

Moreover, U.S. Patent No. 6,764,005 ("the '005 patent") and U.S. Patent No. 7,828,207 ("the '207 patent") are involved in the same district court proceedings, and are in the same patent family as the '875 patent. *See* Pet. 7-8; Ex. 1001, front page. Petitioner has requested *inter partes* review of the '005 patent (IPR2014-00156) and the '207 patent (IPR2014-00157).

D.    *Prior Art Relied Upon by Petitioner*

| | | | |
|---|---|---|---|
| Kikinis | U.S. Patent No. 5,835,732 | Nov. 10, 1998 | Ex. 1005 |
| Gutman | U.S. Patent No. 5,221,838 | Jun. 22, 1993 | Ex. 1006 |
| Pitroda | U.S. Patent No. 5,590,038 | Dec. 31, 1996 | Ex. 1008 |
| Hennige | U.S. Patent No. 5,276,311 | Jan. 4, 1994 | Ex. 1009 |
| Gillig | U.S. Patent No. 5,127,042 | Jun. 30, 1992 | Ex. 1010 |

E.    *Alleged Grounds of Unpatentability*

Petitioner contends claims 1-14 and 16-34 of the '875 patent are unpatentable based on the following grounds. *See* Pet. 9-11.

| Basis | Reference(s) | Claim(s) Challenged |
|---|---|---|
| § 102(e) | Kikinis | 1-7, 9-14, 16-21, 23-31, 33, and 34 |
| § 102(b) | Gutman | 1-7, 9-14, 16-21, 23-31, 33, and 34 |
| § 102(e) | Pitroda | 14 and 16-24 |
| § 102(e) | Hennige | 14, 16-21, 23, and 24 |
| § 103(a) | Gillig and Pitroda | 1-13 and 25-34 |
| § 103(a) | Gillig and Hennige | 1-7, 9-13, 25-31, 33, and 34 |

Case IPR2014-00158
Patent 8,490,875

## II.  ANALYSIS

### A.  *Claim Construction*

As a step in our analysis, we determine the meaning of the claims for purposes of this decision.  In an *inter partes* review, a claim in an unexpired patent shall be given its broadest reasonable construction in light of the specification of the patent in which it appears.  *See* 37 C.F.R. § 42.100(b) (2013).  Under that construction, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire patent disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  We construe the terms below in accordance with that standard.

### 1.  *"Transducer"*

Petitioner and Patent Owner disagree concerning the meaning of "transducer."  *See* Pet. 11; Prelim. Resp. 12–13.  We need not resolve this dispute at the present time because the meaning of this term does not affect our reasons for instituting review.  Specifically, on this record, for the reasons discussed below, we are persuaded Kikinis discloses an "antenna" emitter as recited in the claims, Gutman discloses an "antenna" emitter and a "display" emitter as recited in the claims, Pitroda discloses a "display" emitter as recited in the claims, and Hennige discloses an inductive "coil" emitter and a "display" emitter as recited in the claims.  Thus, we need not determine at the present time whether any of those references additionally discloses a "transducer" emitter as recited in the claims, because the transducer is recited merely as an alternative to an antenna, a display, and a coil.

Case IPR2014-00158
Patent 8,490,875

2.      *"In a Telephone: . . . a Console . . ."*

Petitioner contends one of ordinary skill in the art reading claim 13 "would understand that the console is a component within the telephone." Pet. 11-12 (citing Ex. 1011 (Dreifus Decl.) ¶ 22). Petitioner relies on the format of claim 13, which appears in the '875 patent as follows:

> 13.   A telephone and credit card system comprising:
> in a telephone:
>> a control circuit;
>> a memory . . . ;
>> a designator . . . ;
>> a display . . . ;
>> an emitter coupled to the control circuit and configured to emit a signal relating to the information, the emitter comprising at least one of an antenna, coil, a transducer, the display, and an infrared LED; and
>> a console configured to communicate with the control circuit and receive data . . . .

Ex. 1001, 10:43-60. Petitioner notes the "in a telephone" limitation includes a colon and is followed by several limitations all at the same level of indentation underneath the colon, including the console limitation. *See* Pet. 12.

Patent Owner contends Petitioner's construction is not reasonable, and the "console" of claim 13 "is a separate, outside device with respect to the rest of the inventive combination [i.e., the telephone]." Prelim. Resp. 13-14. Patent Owner contends the format of claim 13 supports its construction over Petitioner's, because "the final 'and' just before 'a console' comes after the end of a finite list with its own 'and' clause: 'and an infrared LED.'" *Id.* at 13.

We are persuaded by Petitioner's construction, which is supported by the format of claim 13. We are not persuaded by Patent Owner's counter argument because the "and" just before "a console" actually ties in the console with the

7

Case IPR2014-00158
Patent 8,490,875

preceding control circuit, memory, designator, display, and emitter limitations, rather than separating them. A similar claim structure is used in claims 1, 12, and 14, where the word "and" between the "display" and "emitter" limitations serves to incorporate both the display and emitter limitations into the telephone. The "and an infrared LED" limitation completes the "emitter" Markush grouping, and therefore is not probative as to the interplay of the console with the rest of the claim. Patent Owner's proposed construction would insert an additional "and" between the "display" and "emitter" limitations, which claim 13 does not have.

We conclude the "console" of claim 13 is a component in the telephone.

### 3. *"In a Telephone"*

Patent Owner contends "'in a telephone' . . . denotes a combination (not juxtaposition) of a telephone with the rest of the invention's circuit elements," which "would exclude, for example, coincidental physical overlap of two different devices." Prelim. Resp. 9. We are not persuaded by this proposal, which is vague because it fails to differentiate a covered "combination" from a non-covered "juxtaposition." Therefore we do not adopt Patent Owner's proposed construction and, moreover, we conclude the meaning of "in a telephone" is sufficiently plain without further construction for purposes of the present decision.

### 4. *"Information Related to At Least One Credit Card Account"*

Patent Owner contends we should construe "information related to at least one credit card account" in claims 1, 13, 14, and 25 to mean "the account number (including binary representations), or information that serves as an account identifier (including binary representations), of a credit card account." Prelim. Resp. 9-10. As support for this proposal, Patent Owner contends the two disclosed examples in the '875 patent specification of the claimed information are data

Case IPR2014-00158
Patent 8,490,875

representing account numbers and account identifiers, including binary representations of such information. *See id.* We do not adopt Patent Owner's proposed construction because it improperly reads particular embodiment(s) of the written description into the claim, when the claim language is broader than the embodiment(s). *See In re Omeprazole Patent Litigation*, 483 F.3d 1364, 1372 (Fed. Cir. 2007). We conclude the meaning of "information related to at least one credit card account" is sufficiently plain without further construction for purposes of the present decision.

5. *"Information Related to At Least One Identification Card Account"*

Patent Owner contends we should construe "information related to at least one identification card account" in claim 12 to mean "information that serves as the account number (including binary representations), or information that serves as an account identifier (including binary representations), of an identification card account that is not a credit card account." Prelim. Resp. 10. We do not adopt Patent Owner's proposed limitation of this claim term to account number(s) and account identifier(s) for the reasons just provided in relation to "information related to at least one credit card account." *See supra* Part II.A.4.

At the same time, we agree with Patent Owner's suggestion that the "identification card account" of claim 12 is different from the "credit card account" of claims 1, 13, 14, and 25. "When different words or phrases are used in separate claims, a difference in meaning is presumed." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) (quoting *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005)). Indeed, it appears that "identification" versus "credit" card account is the only significant difference in scope between claim 12 and claim 1. The only other difference in verbiage is "provide a signal" (claim 12)

9

Case IPR2014-00158
Patent 8,490,875

versus "transmit a signal" (claim 1), which does not appear to be a material distinction.

"However, simply noting the difference in the use of claim language does not end the matter.  Different terms or phrases in separate claims may be construed to cover the same subject matter . . . ."  *Id.*  While we are persuaded an identification card account has a different meaning than credit card account, that begs the question: How would one of ordinary skill in the art interpret "identification card account"?  Our review of the '875 patent specification suggests this term is used only once outside of claim 12 — "the multi-card has stored in it several sets of data corresponding to account related information or patterns for different credit cards, *identification cards* and the like."  Ex. 1001, 3:10-12 (emphasis added).  On the limited record before us concerning this issue, and from that description, it appears that "identification" refers to identifying a person associated with an account.  Therefore, for purposes of deciding the present Petition, we construe "identification card account" to mean an account which has an associated card, wherein the card identifies a person associated with the account.  Under this construction, it may very well be that one single account may be, at the same time, both a credit card account and an identification card account.

6.    *"Display At Least Part of the Information" and*
*"Signal Relating to the Information"*

Patent Owner contends the term "the information," wherever it appears in the claims, must be construed to relate back to the antecedent "information" described in the "memory" limitation of each independent claim.  *See* Prelim. Resp. 11.  We agree with this proposed claim construction.  However, as discussed above, we have not adopted Patent Owner's narrow definition of the antecedent "information relating to" limitations.  *See supra* Part II.A.4-5.

10

Case IPR2014-00158
Patent 8,490,875

### 7. *"Transmit a Signal"*

Patent Owner contends "to transmit a signal" means "to convey a signal to an outside device." Prelim. Resp. 11. Preliminarily, we note claim 1 is the only independent claim to require the emitter to be configured to "transmit" a signal. Ex. 1001, 10:5. The other independent claims require the emitter to be configured to "provide" (claim 12), "emit" (claim 13), "communicate" (claim 14), or "send" (claim 25) a signal. *Id.* at 10:40, 10:55, 11:5, 11:37. We agree with Patent Owner's proposed claim construction that these various claim limitations require the signal to be conveyed externally to the claimed apparatus. However, the '875 patent specification indicates external recipients include not only other devices, but also people using the claimed apparatus. *See id.* at 3:20-26, 6:6-17. Thus, we construe these limitations to mean "to convey a signal to an outside device or a user of the apparatus."

### 8. *"Emitter Comprising At Least One of an Antenna, Coil, a Transducer, the Display, and an Infrared LED"*

Patent Owner contends we must construe this list of emitters to exclude "structures comprised merely of mechanical or electrical 'contacts,'" as well as "visible LEDs or tones on audio phone lines." *See* Prelim. Resp. 12. We need not consider Patent Owner's contention at this time because it does not affect our reasons for instituting review. Specifically, on this record, we are persuaded Kikinis discloses a cellular telephone "antenna" emitter, Gutman discloses an "antenna" emitter (element 202) and a "display" emitter, Pitroda discloses a "display" emitter, and Hennige discloses an inductive "coil" emitter and a "display" emitter. None of those structures is comprised merely of mechanical or electrical contacts or a visible LED, nor do they emit tones on audio phone lines.

11

Case IPR2014-00158
Patent 8,490,875

### B. Prior Art References Considered During Prosecution

Patent Owner points out that many of the prior art references relied upon in the Petition (namely Gutman, Pitroda, Hennige, and Gillig) were considered by the Examiner during prosecution of the '875 patent, and contends "[t]his is a key statutory factor that the PTAB must take into account before deciding whether [to] institute review" under 35 U.S.C. § 325(d). Prelim. Resp. 1. That statute states "the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d). The statute is permissive, not mandatory, and we decline to exercise our discretion to deny institution on the basis that these references previously were presented to the office.

### C. Anticipation by Kikinis

Petitioner contends claims 1-7, 9-14, 16-21, 23-31, 33, and 34 of the '875 patent are unpatentable as anticipated by Kikinis. *See* Pet. 13-22.

### 1. Independent Claim 1

Claim 1 recites an apparatus comprising several components in a telephone. Figure 11 of Kikinis is reproduced here:



Fig. 11

Case IPR2014-00158
Patent 8,490,875

Figure 11 shows a micro personal digital assistant ("*μ*PDA") docked in a cellular or cordless telephone. *See* Ex. 1005, 4:9-11, 14:26-29. When *μ*PDA 10 is docked in telephone 45, *μ*PDA 10 and all of its components are "in" telephone 45 as required by claim 1. *See id.* at 3:20-35, 14:26-35. Patent Owner contends *μ*PDA 10 "does not involve a combination 'in a telephone' as properly construed" (Prelim. Resp. 19), but we have rejected the claim construction upon which this argument rests. *See supra* Part II.A.3.

Claim 1 recites a control circuit, a memory, a designator, and a display in the telephone. We are persuaded, on the present record, that these requirements are disclosed in Kikinis. *See* Pet. 14-18. In Kikinis, *μ*PDA 10 has a microcontroller (*see* Ex. 1005, 5:48-6:2), a memory (*see id.*), a touch-sensitive input (*see id.* at 6:57-65, 7:16-18), a thumbwheel input (*see id.* at 14:44-47), and a display (*see id.* at 5:33-35), all of which reside in telephone 45 when *μ*PDA 10 is docked in telephone 45. *See id.* at 14:29-47. Also, the memory of Kikinis is configured to store information related to at least one credit card account, as required by claim 1. *See id.* at 14:33-50.

Claim 1 requires the display to be configured to display at least part of the credit card account information upon selection of the designator. Petitioner contends the display of *μ*PDA 10 in Kikinis is configured to display credit card account information. *See* Pet. 17 (citing Ex. 1005, 14:33-47). On the record presently before us, we are persuaded by Petitioner's contention. Specifically, Kikinis states:

> With the *μ*PDA docked, all of the software and memory of the *μ*PDA is available to the telephone and a user may operate the phone by I/O interface 16.
>
> In this aspect of the invention, unique control routines and *display configurations* are provided to enhance use of the cellular

Case IPR2014-00158
Patent 8,490,875

> phone. For example, *all of the user's collection of* phone numbers,
> *associated credit card numbers*, access codes, etc. are *readily
> available* and *may be quickly and conveniently accessed* and used. In
> one aspect, a simple input displays alphabet letters to select, and once
> a letter is selected, a partial list of parties that might be called is
> displayed. . . .

Ex. 1005, 14:33-44 (emphases added). According to Patent Owner, the Kikinis disclosure is limited to displaying a highlighted entry from a list of parties that might be called using telephone 45, and fails to describe displaying credit card account information. *See* Prelim. Resp. 19. Patent Owner's interpretation of the '875 patent passage quoted above focuses on the "one aspect" disclosed at the end, and ignores the more general description preceding the discussion of that one aspect. On this record, we are persuaded the more general discussion in Kikinis discloses that the display of $\mu$PDA 10 is configured to display credit card account information.

Claim 1 requires the emitter to comprise at least one of an antenna, a coil, a transducer, the display, and an infrared LED. Petitioner contends the Kikinis telephone 45 "includes an antenna to transmit a signal." Ex. 1011 (Dreifus Decl.), p. 23; *see also* Pet. 18. Patent Owner contends the antenna of telephone 45 cannot satisfy the emitter limitation of claim 1 because that antenna resides in telephone 45, whereas the other components required by claim 1 reside in $\mu$PDA 10. *See* Prelim. Resp. 20. This contention, however, rests upon Patent Owner's construction of "in a telephone," which we have already rejected. *See supra* Part II.A.3. We therefore find Patent Owner's contention to be unpersuasive.

Claim 1 further requires the emitter to be configured to transmit a signal relating to the credit card account information. Kikinis discloses $\mu$PDA 10 may be utilized to select a party to call using telephone 45, and $\mu$PDA 10 then "dials the

Case IPR2014-00158
Patent 8,490,875

call, including necessary credit card information stored in the memory of the μPDA for this purpose." Ex. 1005, 14:36-50. Patent Owner contends that "[t]his ambiguous statement does not denote credit card information being emitted by anything, including telephone 45's antenna" and "[a]ll it denotes is that the credit card information is somehow used for the purpose of the μPDA dialing the call — an internal process that can mean many things." Prelim. Resp. 20. We are not persuaded. On the present record, we conclude the Kikinis disclosure includes credit card information in the dialing of the call, and therefore the credit card information is transmitted by the antenna of telephone 45. *See* Ex. 1005, 14:48-50.

For the foregoing reasons, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 1 is unpatentable as anticipated by Kikinis.

### 2. *Independent Claim 12*

Claim 12 is substantially identical to claim 1, except that the information of claim 12 relates to an "identification card account" rather than a "credit card account." We are persuaded Kikinis discloses the common limitations in claims 1 and 12. *See supra* Part II.B.1. As to "identification card account," we have construed this term to mean an account that has an associated card, wherein the card identifies a person associated with the account. A credit card account is such an account. Therefore, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 12 is unpatentable as anticipated by Kikinis.

### 3. *Independent Claim 13*

Claim 13 is substantially identical to claim 1, except claim 13 contains an additional limitation: "a console configured to communicate with the control circuit and receive data to provide access to at least one of an account, a service,

and a feature." We are persuaded Kikinis discloses the common limitations in claims 1 and 13. *See supra* Part II.B.1. Petitioner contends the console in Kikinis corresponds to "μPDA's host interface 14 or optional expansion bus 20, and/or . . . telephone 45's docking port 49." Pet. 18 (citing Ex. 1011 (Dreifus Decl.) ¶ 37). On this record, we are persuaded that these elements in Kikinis are configured to communicate with the microcontroller and to receive data. Therefore, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 13 is unpatentable as anticipated by Kikinis.

### 4. *Independent Claim 14*

Claim 14 is substantially identical to claim 1, except that it does not recite "in a telephone." We are persuaded Kikinis discloses the common limitations in claims 1 and 14. *See supra* Part II.B.1. Therefore, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 14 is unpatentable as anticipated by Kikinis.

### 5. *Independent Claim 25*

Claim 25 recites a method comprising four steps, each one of which finds a corresponding apparatus component in claim 1 for performing the step. We conclude Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 25 is unpatentable as anticipated by Kikinis, based on the analysis already provided for claim 1. *See supra* Part II.B.1.

### 6. *Challenged Dependent Claims*

As already discussed, we are persuaded Kikinis discloses the limitations of independent claims 1, 14, and 25 of the '875 patent. We therefore consider the dependent claims challenged as anticipated by Kikinis. In this regard, Patent Owner does not address any dependent claims in the Preliminary Response, other

Case IPR2014-00158
Patent 8,490,875

than stating "[p]atentability of an independent claim leads to patentability of a dependent claim over the same art." Prelim. Resp. 16 n.1.

Claims 2, 16, and 26 specify a receiver configured to receive data from an external device. Petitioner contends Kikinis discloses such a receiver as an IR interface in the $\mu$PDA, an RF interface in the $\mu$PDA, or the antenna of the cellular telephone. *See* Pet. 20.

Claims 3, 17, and 27 specify the credit card account information is an account identifier, and claims 4, 18, and 28 specify the credit card account information is a form of data. Petitioner contends the "associated credit card numbers" stored in the $\mu$PDA memory of Kikinis satisfy both these requirements. *See* Pet. 20-21 (quoting Ex. 1005, 14:39).

Claims 5, 19, and 29 specify a plurality of sets of the information is stored in the memory. Petitioner contends Kikinis meets this claim limitation, in that the $\mu$PDA memory stores "all of the user's collection of . . . associated credit card numbers." *See* Pet. 21 (quoting Ex. 1005, 14:38-41).

Claims 6, 20, and 30 specify the display is configured to display a message. Petitioner contends the Kikinis $\mu$PDA display is so configured, in that it may display "scrolling of icons, characters, menus" and the like as well as documents. *See* Pet. 21; Ex. 1005, 5:7-10, 7:29-8:13.

Claims 7, 21, and 31 specify the display is a liquid crystal display. Petitioner contends the Kikinis $\mu$PDA display is a liquid crystal display. *See* Pet. 21 (citing Ex. 1005, 5:33-35).

Claims 9, 23, and 33 specify a touch sensitive component configured to receive an input. Petitioner contends Kikinis discloses an I/O interface having a touch sensitive area configured to receive an input. *See* Pet. 21 (citing Ex. 1005, 6:57-65, 7:24-26).

Case IPR2014-00158
Patent 8,490,875

Claims 10, 24, and 34 specify an input/output interface coupled to the emitter and the control circuit. Petitioner contends host interface 14 and/or optional expansion bus 20 of Kikinis satisfies this claim limitation. *See* Pet. 22 (citing Ex. 1005, 6:30-34, 14:29-35).

Claim 11 specifies the at least one credit card account comprises two or more credit card accounts. Petitioner contends Kikinis discloses storing "associated credit card numbers" (plural) in the $\mu$PDA memory to satisfy this requirement. *See* Pet. 22 (citing Ex. 1005, 14:33-47).

We find Petitioner's contentions with respect to dependent claims 2-7, 9-11, 16-21, 23, 24, 26-31, 33, and 34, discussed above, persuasive on the present record, and conclude Petitioner has established a reasonable likelihood Petitioner would prevail in showing those claims are unpatentable as anticipated by Kikinis.

### D. Anticipation by Gutman

Petitioner contends claims 1-7, 9-14, 16-21, 23-31, 33, and 34 of the '875 patent are unpatentable as anticipated by Gutman. *See* Pet. 22-31.

### 1. Independent Claim 1

Claim 1 recites an apparatus comprising several components in a telephone. Figures 1, 2A, and 2B of Gutman are reproduced here:



*FIG.1*

Figure 1 shows an electronic wallet. *See* Ex. 1006, 4:3-5.

18

Case IPR2014-00158
Patent 8,490,875



FIG. 2A

FIG. 2B

Figures 2A and 2B show block diagrams of some of the components in the electronic wallet. *See id.* at 4:6-7. Gutman's electronic wallet 100 has telephonic capabilities. *See id.* at 4:36-54, 9:10-26. Specifically, electronic wallet 100 may communicate with a central financial computer via a wired telephone line using telephone interface circuitry 230. *See id.*; *see also id.* fig. 2B.

Patent Owner contends components contained within Gutman's electronic wallet 100 are not "in a telephone" as required by claim 1, because telephone interface circuitry 230 is not a telephone, but rather "is simply the hardware component that allows the electronic wallet to supply modem functionality over a landline." Prelim. Resp. 23-24. We are not persuaded by this contention. In particular, Patent Owner does not specify what component(s) in addition to a telephone line interface are required for a device (such as electronic wallet 100) to be a telephone.

Gutman has controller 205 and memory 206 to store information corresponding to an account balance, as well as financial transaction details for "an account at a financial institution." Ex. 1006, 6:49-54, 7:3-12, 7:34-54. Patent Owner contends: "Nowhere does [Gutman] mention that this particular financial

Case IPR2014-00158
Patent 8,490,875

account is a credit card account." Prelim. Resp. 22. We are not persuaded.
Gutman discloses financial card reader 122 of electronic wallet 100 may read
"financial information" from financial card 126 such as a MasterCard or Visa card,
which information "may subsequently be stored" in electronic wallet 100.
Ex. 1006, 5:44-59. One advantage of doing so is "financial information from
multiple financial cards may be better organized and secured in one place (i.e.,
within the electronic wallet 100)." *Id.* at 6:16-20. Based on these various
disclosures in Gutman, we are persuaded Gutman's disclosure of financial
institution account information in column 7 includes the credit card account
information discussed in column 5, lines 44-59.

We are persuaded, on the present record, by Petitioner's contentions relating
to Gutman's disclosure of the control circuit, memory, designator, display, and
emitter limitations of claim 1. *See* Pet. 21-24. In particular, we are persuaded that
Gutman's antenna 202 and/or display 108 correspond to the claimed "emitter"
because both are configured to convey a signal relating to credit card account
information. *See id.* at 26-27 (citing Ex. 1006, 8:19-29, 8:43-50, 8:60-64).

For the foregoing reasons, Petitioner has established a reasonable likelihood
Petitioner would prevail in showing claim 1 is unpatentable as anticipated by
Gutman.

## 2. *Independent Claims 12, 13, 14, and 25*

We are persuaded Gutman discloses the common limitations among claim 1
and the other independent claims of the '875 patent. *See supra* Part II.C.1. As to
claim 12's "identification card account," we have construed this term above to
mean an account which has an associated card, wherein the card identifies a person
associated with the account. The credit card account disclosed in Gutman is such
an account. We are persuaded by Petitioner's contention that the "console" in

claim 13 corresponds to financial card reader 122 in Gutman, as it is configured to communicate with the microcontroller and to receive data. *See* Pet. 27. Claim 14 is substantially identical to claim 1, except that it does not recite "in a telephone." Finally, our analysis of claim 1 applies to the method steps of claim 25. Therefore, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claims 12, 13, 14, and 25 are unpatentable as anticipated by Gutman.

### 3. *Challenged Dependent Claims*

As already discussed, we are persuaded Gutman discloses the common limitations of independent claims 1, 14, and 25 of the '875 patent. We therefore consider the dependent claims challenged as anticipated by Gutman. In this regard, Patent Owner does not address any dependent claims in the Preliminary Response, other than stating "[p]atentability of an independent claim leads to patentability of a dependent claim over the same art." Prelim. Resp. 16 n.1.

Claims 2, 16, and 26 specify a receiver configured to receive data from an external device. Petitioner contends Gutman discloses several such receivers, including receiver 203 that operates to receive a signal via antenna 202, bar code reading device 116, and financial card reader 122. *See* Pet. 29 (citing Ex. 1006, 6:43-46, 5:2-6, 5:44-59).

Claims 3, 17, and 27 specify the credit card account information is an account identifier, and claims 4, 18, and 28 specify the credit card account information is a form of data. Petitioner contends these limitations are met by Gutman's storage of credit card numbers read from financial cards 126, and account information such as account balance. *See* Pet. 29-30 (citing Ex. 1006, 5:44-54).

Case IPR2014-00158
Patent 8,490,875

Claims 5, 19, and 29 specify a plurality of sets of the information is stored in the memory. Petitioner contends Gutman correspondingly discloses a plurality of credit card numbers can be stored. *See* Pet. 30 (citing Ex. 1006, 6:10-20).

Claims 6, 20, and 30 specify the display is configured to display a message. Petitioner contends this limitation is met by Gutman's indication that display 108 may display "information" to a user, such as financial information and an account balance. *See* Pet. 30 (citing Ex. 1006, 4:58-60, 8:19-29).

Claims 7, 21, and 31 specify the display is a liquid crystal display. Petitioner contends display 108 of Gutman is a liquid crystal display. *See* Pet. 30 (citing Ex. 1006, 4:58-60).

Claims 9, 23, and 33 specify a touch sensitive component configured to receive an input. Petitioner contends Gutman's keyboard 102, function keys 104, and buttons 106 are touch sensitive components configured to receive an input. *See* Pet. 31 (citing Ex. 1006, 4:55-58).

Claims 10, 24, and 34 specify an input/output interface coupled to the emitter and the control circuit. Petitioner contends antenna 202 satisfies this claim limitation. *See* Pet. 31 (citing Ex. 1006, 6:43-46, 8:47-64).

Claim 11 specifies the at least one credit card account comprises two or more credit card accounts. Petitioner contends Gutman can store information relating to two or more credit card accounts. *See* Pet. 31 (citing Ex. 1006, 6:10-20).

We find Petitioner's contentions with respect to dependent claims 2-7, 9-11, 16-21, 23, 24, 26-31, 33, and 34, discussed above, persuasive on the present record, and conclude Petitioner has established a reasonable likelihood Petitioner would prevail in showing those claims are unpatentable as anticipated by Gutman.

Case IPR2014-00158
Patent 8,490,875

### E.    Anticipation by Pitroda

Petitioner contends claims 14 and 16-24 of the '875 patent are unpatentable as anticipated by Pitroda.  *See* Pet. 31-38.

### 1.    Independent Claim 14

Claim 14 recites an apparatus comprising a control circuit, a memory, a designator, a display, and an emitter.  We are persuaded on the present record that these requirements are disclosed in Pitroda.  *See* Pet. 33-35.  Figure 3 of Pitroda is reproduced here:



**FIG. 3**

Figure 3 shows a block diagram of a universal electronic transaction ("UET") card. *See* Ex. 1008, abs., 8:28-29.  Specifically, Pitroda's UET card has microcontroller with associated RAM and ROM, as well as additional non-volatile RAM 34.  *See id.* at 11:19-23.  Pitroda's UET card further includes LCD and touch screen display 30, wherein the touch screen portion of display 30 is large enough to enable a user to operate touch controls.  *See id.* at 11:13-19.  A user of Pitroda's UET card may use touch screen display 30 to select credit card account information from the UET card memory, to be shown in display 30.  *See id.* at 11:29-53, 13:59-14:9.

23

Case IPR2014-00158
Patent 8,490,875

Claim 14 recites an emitter configured to transmit a signal relating to the credit card account information. Petitioner contends Pitroda discloses such an emitter in its display 30. *See* Pet. 35-36; Ex. 1008, 8:43-44, 13:23-38. Patent Owner contends Pitroda's display 30 must be altered in order to meet the requirements of claim 14. *See* Prelim. Resp. 26 (discussing *High Tech. Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995)). We are not persuaded by Patent Owner's contention. In particular, Pitroda indicates display 30 may "display basic card information such as the name, the card number, the date of issue, the date of expiration, etc., in the form of a bar code pattern to be read by a bar code reader in a predetermined area." Ex. 1008, 8:33-38. Thus, contrary to Patent Owner's argument, Pitroda discloses that its display 30 is configured to transmit a signal relating to the credit card account information.

For the foregoing reasons, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 14 is unpatentable as anticipated by Pitroda.

## 2. *Challenged Dependent Claims*

As already discussed, we are persuaded Pitroda discloses the limitations of independent claim 14 of the '875 patent. We therefore consider the dependent claims challenged as anticipated by Pitroda. In this regard, Patent Owner does not address any dependent claims in the Preliminary Response, other than stating "[p]atentability of an independent claim leads to patentability of a dependent claim over the same art." Prelim. Resp. 16 n.1.

Claim 16 specifies a receiver configured to receive data from an external device. Petitioner contends Pitroda discloses such receivers as contacts 13 or 38 (*see* Ex. 1008, 9:36-37, 11:24-26) or an infrared / radio frequency option 39 (*see id.* at 9:54-63, 11:25-26). *See* Pet. 36.

Case IPR2014-00158
Patent 8,490,875

Claim 17 specifies the credit card account information is an account identifier, and claim 18 specifies the information is a form of data. Petitioner contends the Pitroda UET card's memory can store credit card account numbers and various details associated with each credit card account. *See* Pet. 36-37 (citing Ex. 1008, 3:13-33).

Claim 19 specifies a plurality of sets of the information is stored in the memory. Petitioner contends the Pitroda's stored information can be a plurality of credit card numbers. *See* Pet. 37 (citing Ex. 1008, 3:4-22).

Claim 20 specifies the display is further configured to display a message. Petitioner contends the Pitroda display is configured to display a message. *See* Pet. 37 (citing Ex. 1008, 11:14-17).

Claim 21 specifies the display is a liquid crystal display. Petitioner contends Pitroda display 30 is a liquid crystal display. *See* Pet. 37 (citing Ex. 1008, 11:14-15).

Claim 22 specifies the display is an optical display configured to simulate a pattern. Petitioner contends Pitroda meets this limitation because display 30 is configured to display basic card information "in the form of a bar code pattern to be read by a bar code reader." *See* Pet. 37 (citing Ex. 1008, 13:33-38).

Claim 23 specifies a touch sensitive component configured to receive an input. Petitioner contends the touch screen portion of Pitroda display 30 meets this limitation. *See* Pet. 38 (citing Ex. 1008, 11:12-19).

Claim 24 specifies an input/output interface coupled to the emitter and the control circuit. Petitioner contends this limitation is met by Pitroda's metal contacts 13/38 and/or IR/RF option 39. *See* Pet. 38 (citing Ex. 1008, 9:36-37, 11:24-25, 9:54-63).

Case IPR2014-00158
Patent 8,490,875

We find Petitioner's contentions with respect to dependent claims 16-24, discussed above, persuasive on the present record, and conclude Petitioner has established a reasonable likelihood Petitioner would prevail in showing those claims are unpatentable as anticipated by Pitroda.

### F.    Anticipation by Hennige

Petitioner contends claims 14, 16-21, 23, and 24 of the '875 patent are unpatentable as anticipated by Hennige.  *See* Pet. 38-43.

### 1.    Independent Claim 14

Claim 14 recites an apparatus comprising a control circuit, a memory, a designator, a display, and an emitter.  We are persuaded these requirements are disclosed in Hennige.  *See* Pet. 39-41.  Figure 1a of Hennige is reproduced here:



Figure 1a shows an electronic multi-function card.  *See* Ex. 1009, 3:45-47.  Multi-function card 10 of Hennige has "the usual electronic circuit means which are regarded as standard today," such as a microprocessor; an electronic storage coupled to the microprocessor; alpha-numeric input keys or separate selection input keys; and display 11 and signature display 12.  *Id.* at 4:35-45, 5:55-6:16.  The electronic storage contains a data set for multiple credit card accounts, each

26

Case IPR2014-00158
Patent 8,490,875

including "the special information or logo of the issuing company or bank, the card number and the date of expiry, any stored photos or, if desired, other machine-readable data and the user's signature." *Id.* at 3:29-32, 3:63-67.

Claim 14 recites an emitter configured to communicate a signal relating to the credit card account information. We are persuaded by Petitioner that Hennige discloses such an emitter in its "contactless means" for communication "for example inductively, or serially by means of photoelectric elements, or the like." Ex. 1009, 4:51-53, 7:27-37. Patent Owner contends these other communication means disclosed in Hennige operate solely to *receive* information, and do not operate to *emit* information. *See* Prelim. Resp. 27-28. However, the disclosure of Hennige indicates those other communication means may be used by electronic multi-function card 10 to transmit credit card account information to checking terminal 20 in order to pay an invoice using the credit card account. *See* Ex. 1009, 7:9-45. Thus, these other communication means emit a signal relating to the credit card account information, as required by claim 14. We further note Hennige's display 11 may correspond to the claimed emitter. *See id.* at 4:21-34, 5:55-6:5.

For the foregoing reasons, Petitioner has established a reasonable likelihood Petitioner would prevail in showing claim 14 is unpatentable as anticipated by Hennige.

## 2. *Challenged Dependent Claims*

As already discussed, we are persuaded Hennige discloses the limitations of independent claim 14 of the '875 patent. We therefore consider the dependent claims challenged as anticipated by Hennige. In this regard, Patent Owner does not address any dependent claims in the Preliminary Response, other than stating "[p]atentability of an independent claim leads to patentability of a dependent claim over the same art." Prelim. Resp. 16 n.1.

Case IPR2014-00158
Patent 8,490,875

Claim 16 specifies a receiver configured to receive data from an external device. Petitioner contends the mechanical contacts or other contactless communication means of Hennige are such a receiver. *See* Pet. 42 (citing Ex. 1009, 4:45-53, 7:27-37).

Claim 17 specifies the credit card account information is an account identifier, and claim 18 specifies the information is a form of data. Petitioner contends these limitations are met by Hennige as it stores credit card account numbers and dates. *See* Pet. 42 (citing Ex. 1009, 3:28-32, 5:61-65).

Claim 19 specifies a plurality of sets of the information is stored in the memory. Petitioner contends Hennige correspondingly stores a plurality of credit card numbers. *See* Pet. 42 (citing Ex. 1009, 2:10-12); Ex. 1009, 3:28-32, 6:55-65.

Claim 20 specifies the display is configured to display a message. Petitioner contends Hennige discloses display 11 is configured to display a message. *See* Pet. 42-43 (citing Ex. 1009, 5:56-65).

Claim 21 specifies the display is a liquid crystal display. Petitioner contends displays 11 and 12 of Hennige are liquid crystal displays. *See* Pet. 43 (citing Ex. 1009, 4:22-26).

Claim 23 specifies a touch sensitive component configured to receive an input. Petitioner contends alpha-numeric keys 13 and selection keys 14 of Hennige are touch sensitive input components. *See* Pet. 43 (citing Ex. 1009, 4:35-36).

Claim 24 specifies an input/output interface coupled to the emitter and the control circuit. Petitioner contends this limitation is met by Hennige's mechanical contacts or other contactless means. *See* Pet. 43 (citing Ex. 1009, 4:45-53, 7:27-37).

We find Petitioner's contentions with respect to dependent claims 16-21, 23, and 24, discussed above, persuasive on the present record, and conclude Petitioner

28

Case IPR2014-00158
Patent 8,490,875

has established a reasonable likelihood Petitioner would prevail in showing those claims are unpatentable as anticipated by Hennige.

### G. Obviousness Over Gillig and Pitroda,
### or Over Gillig and Hennige

Petitioner contends claims 1-13 and 25-34 of the '875 patent are unpatentable under 35 U.S.C. § 103(a) as obvious over Gillig and Pitroda, and claims 1-7, 9-13, 25-31, 33, and 34 are unpatentable as obvious over Gillig and Hennige. *See* Pet. 43-57. Patent Owner disagrees. *See* Prelim. Resp. 28-30. For the following reasons, we agree with Patent Owner that Petitioner has not presented a persuasive reason for combining Gillig and Pitroda, or Gillig and Hennige, in the fashion proposed in the petition.

Taking claim 1 as representative of Petitioner's arguments, Petitioner has established that Gillig discloses all of the hardware components identified in claim 1: a telephone, a control circuit, a memory, a designator, a display, and an antenna. *See* Pet. 44-45, 47-48. However, it appears Gillig does not disclose using those hardware components in connection with "information related to at least one credit card account," as required by claim 1. Petitioner contends using the Gillig telephone in connection with such information would have been obvious to one of ordinary skill in the art in light of Pitroda or Hennige. *See* Pet. 45-47. There appears to be no dispute that the Gillig telephone is *capable* of being so modified. *See* Pet. 45 (discussing prosecution history of '875 patent relating to enablement under 35 U.S.C. § 112, ¶ 1). We agree with Patent Owner, however, that obviousness requires something more than the mere capability of combination. *See* Prelim. Resp. 15-16. In particular, obviousness requires a reason why one of ordinary skill in the art would have combined the known elements in the fashion claimed. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417-18 (2007).

29

Case IPR2014-00158
Patent 8,490,875

In that regard, Petitioner proffers two such reasons for combining Gillig with Pitroda and with Hennige. First, Petitioner contends modifying the Gillig telephone to incorporate credit card account information in light of Pitroda or Hennige would "allow credit card users to avoid having to carry multiple credit cards." Pet. 45 (citing Ex. 1011 (Dreifus Decl.) ¶¶ 116, 122). Second, Petitioner contends the combination would "allow users of the telephone to have access to these cards when making long distance phone calls, or making purchases over the phone." Pet. 46 (citing Ex. 1011 (Dreifus Decl.), ¶¶ 116, 122). We are not persuaded. In particular, we agree with Patent Owner that Pitroda and Hennige already allow credit card users to avoid having to carry multiple credit cards (*see* Prelim. Resp. 29-30), and Pitroda and Hennige already provide access to credit cards for purposes of making telephone calls or purchases over the phone. Petitioner's proffered reasons for modifying Gillig to include credit card account information fail to provide a persuasive reason why one of ordinary skill would incorporate the Pitroda / Hennige functionality into Gillig's telephone.

For the foregoing reasons, Petitioner has not established a reasonable likelihood Petitioner would prevail in showing the challenged '875 patent claims are unpatentable as obvious over Gillig and Pitroda, or over Gillig and Hennige.

## III.   CONCLUSION

On the present record, Petitioner has shown a reasonable likelihood Petitioner would prevail in showing claims 1-7, 9-14, 16-31, 33, and 34 are unpatentable over the prior art. The Board, however, has not made a final determination under 35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

Case IPR2014-00158
Patent 8,490,875

## IV.    ORDER

For the foregoing reasons, it is

ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes* review is

hereby instituted as to:

A.    Claims 1-7, 9-14, 16-21, 23-31, 33, and 34 for being unpatentable as

anticipated by Kikinis;

B.    Claims 1-7, 9-14, 16-21, 23-31, 33, and 34 for being unpatentable as

anticipated by Gutman;

C.    Claims 14 and 16-24 for being unpatentable as anticipated by Pitroda;

and

D.    Claims 14, 16-21, 23, and 24 for being unpatentable as anticipated by

Hennige.

FURTHER ORDERED that no other grounds raised in the petition are

authorized for this *inter partes* review.

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R.

§ 42.4 (2013), notice is hereby given of the institution of a trial; the trial

commencing on the entry date of this Order.

FURTHER ORDERED that an initial conference call with the Board is

scheduled pursuant to the Board's Scheduling Order entered herewith.  The parties

are directed to the Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,765-

66 (Aug. 14, 2012), for guidance in preparing for the initial conference call, and

should be prepared to discuss any proposed changes to the Scheduling Order and

any motions the parties anticipate filing during the trial.

Case IPR2014-00158
Patent 8,490,875


FOR PETITIONER:

Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com

FOR PATENT OWNER:

Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com